CHANDLER PROP. V. CALDWELL'S CREEK

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2–04-207-CV

RAMAN CHANDLER PROPERTIES, L.C., APPELLANTS

VILLAS AT CALDWELL CREEK, LTD., AND

CALDWELL’S CREEK, LTD.

V.

CALDWELL’S CREEK HOMEOWNERS APPELLEE

ASSOCIATION, INC.

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellants Raman Chandler Properties, L.C. (the Managing Partners), Villas at Caldwell Creek, Ltd. (The Villas), and Caldwell’s Creek, Ltd. (the Developer) appeal from a declaratory judgment the trial court granted in favor of appellee Caldwell’s Creek Homeowners Association, Inc. (the Association) in connection with an access easement located in the Caldwell’s Creek Addition (the Addition).  After a trial to the court, it rendered judgment in favor of the Association and determined that the easement and common areas were for the sole benefit and exclusive use of the homeowners of the Addition and that therefore the Managing Partners and the Developer had no authority to grant an access easement to The Villas.  The trial court also granted the Association its attorneys’ fees under sections 37 and 38 of the civil practices and remedies code.  We affirm.

I.  Factual Summary

The Developer was the owner of 57.9 acres in the Colleyville area of Tarrant County that it planned to develop for high-end residential use.  The Developer is a Texas limited partnership whose general managing partner is Raman Chandler Properties, L.C. (the Managing Partner).
(footnote: 1)  According to the plat for the Addition, the Developer dedicated a common area consisting of all “private, open spaces, Lot 39, Block 2 and Median and the 20-foot strip along Lot 41, Block 2 . . . as defined in the Deed Restrictions.”  These areas were developed with parks, small streams, ponds, and walkways.  After various amendments to the plats, the common areas in the Addition consisted of all private open spaces and Lots 39, 40A, and 41A, Block 2 and the median at Caldwell Creek Drive.

From 1994 through 1999 the Developer sold lots in the Addition.  In October 1999 the Association was formally incorporated as Caldwell’s Creek Homeowners Association, Inc.  In December 1999, however, the Developer executed an easement agreement (the Easement Agreement) granting access to the Addition’s common areas in favor of The Villas, an adjacent development.  The Developer for the Addition was also the developer for The Villas.  The purported access easement was a twenty-foot easement that ran generally north and south along the east property line of the Addition, along the east edge of Lots 39 and 40A of Block 2 of the Addition, and adjacent to a portion of The Villas.  It ran from the north end at John McCain Road to the southeast corner of the Addition where it abutted a railroad right of way forming the lower boundary of the Addition.  Under the easement’s terms, the Association remained obligated for all expenses incurred maintaining the common areas, with The Villas assuming the expense and maintenance of a new iron and brick fence along their common border with the Addition.  As a result, lot owners in The Villas gained virtually free and uninterrupted pedestrian access from The Villas to John McCain Road over the Addition’s common areas as well as full access and use of the Addition’s common areas.  This was so despite the fact that The Villas already had access to John McCain Road over and through its own development and by virtue of its most northerly border that abutted John McCain Road.

After granting the easement, the Developer removed the pre-existing wooden privacy fence along the common border between the two additions.  Then, in January 2000 the Developer deeded the lots in the common areas of the Addition to the newly formed Association, but the conveyance was specifically subject to the just-granted access easement in favor of The Villas.  Simultaneously, the Developer assigned all of its rights, powers, and authority in the Addition to the Association.

The Association rejected the deed by written notice to the Developer’s Managing Partner.  The Association claimed that the property had already been conveyed to it by operation of law when the Association was formed.  It claimed it was not subject to the Developer’s newly created Easement Agreement with The Villas and demanded its removal.  When the Developer refused, the Association ultimately filed this suit.  The case was tried to the court, which rendered judgment for the Association.

II.  Issues Presented

In six issues appellants challenge the trial court’s judgment in favor of the Association.  In their first issue, they challenge the trial court’s determination that the common areas were for the “sole and exclusive use” of the homeowners in the Addition.
(footnote: 2)
 In their second issue, appellants assert trial court error in basing its judgment on “estoppel in pais,” claiming that there were no pleadings to support that theory.  Additionally, appellants raise legal and factual sufficiency challenges to the conclusion that estoppel in pais precluded the Managing Partner and the Developer from granting easement rights that affect the Addition’s common areas.  Here, appellants challenge findings of fact fifteen and sixteen and conclusions of law nine and ten. 

In their third issue, appellants assert that the trial court erred in concluding that the Developer was barred from granting an easement affecting the common areas of the Addition for the use and benefit of The Villas.
(footnote: 3)
 In their fourth issue, appellants assert trial court error in finding that the December 17, 1999 Easement Agreement is null and void, thereby voiding the language in the Special Warranty Deed from the Developer to the Addition that made that grant subject to the Easement Agreement.
(footnote: 4)
 In their fifth and sixth issues, appellants allege trial court error in awarding the Association its attorneys’ fees under either the declaratory judgments act  or chapter 38 of the civil practices and remedies code.

III.  Standards of Review

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 
48 Tex. Sup. Ct. J. 848, 863, 
2005 WL 1366509, at *14 (Tex. June 10, 2005). 

If a party is attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, and there is no evidence to support the finding, we review all the evidence to determine whether the contrary proposition is established as a matter of law.
  Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 241 (Tex. 2001); 
Sterner v. Marathon Oil Co.
, 767 S.W.2d 686, 690 (Tex. 1989).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.  
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).  Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.  
McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986); 
Reliance Ins. Co. v. Denton Cent. Appraisal Dist.
, 999 S.W.2d 626, 629 (Tex. App.—Fort Worth 1999, no pet.).  Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts.  
Mehan v. WAMCO XXVIII, Ltd.
, 138 S.W.3d 415, 418 (Tex. App.—Fort Worth 2004, no pet.);
 Rogers v. City of Fort Worth
, 89 S.W.3d 265, 277 (Tex. App.—Fort Worth 2002, no pet.); 
Forbis v. Trinity Universal Ins. Co.
, 833 S.W.2d 316, 319 (Tex. App.—Fort Worth 1992, writ dism'd)
.

The trial court filed thirty-six findings of fact and twelve conclusions of law.  
Appellants have not challenged findings of fact one, two, five, six, ten, fourteen, seventeen, eighteen, twenty, twenty-two, thirty-one, thirty-two, thirty-three, thirty-four, thirty-five, or thirty-six or conclusions of law two, five, seven, or twelve.  We will so note the effect of this where appropriate to the analysis of the issues raised. 

IV.  Discussion

A.  Overview

Key to a discussion of appellants’ issues on the merits is the central question of when and if a developer loses its right to make adjustments to a dedicated plat of a subdivision and what rights, if any, inure to the benefit of the homeowners who purchase lots within a subdivision during the start-up phase of the development—before the deed restrictions allow for or establish the actual homeowners’ association that will ultimately hold the obligations and duties previously held by the developer.  Answers to these questions will establish the framework for our analysis of the issues raised by appellants in this appeal.  We turn first to issues one, three, and four, which they discuss together.

B.  Restrictive Covenants

We review a trial court’s interpretation of restrictive covenants de novo.  
Buckner v. Lakes of Somerset Homeowners Ass’n, Inc.
, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied).  We apply general rules of contract construction when construing restrictive covenants.  
Id.
; 
see also Pilarcik v. Emmons
, 966 S.W.2d 474, 478 (Tex. 1998).  If the covenant has a definite or certain meaning, it is unambiguous as a matter of law.  
Buckner, 
133 S.W.3d at 297
.

A restrictive covenant should be liberally construed to give effect to its purpose and intent.  
Tex. Prop. Code Ann.
 § 202.003(a) (Vernon 1995).  However, doubts should be resolved in favor of the free and unrestricted use of the premises, and any ambiguity must be strictly construed against the party seeking to enforce the restrictive covenant.  
Dyegard Land P’ship v. Hoover
, 39 S.W.3d 300, 308-09 (Tex. App.—Fort Worth 2001, no pet.).

Id.
; 
see also
 
Youssefzadeh v. Brown
, 131 S.W.3d 641, 644-45 (Tex. App.—Fort Worth 2004, no pet.).

Texas has long recognized the use of restrictive covenants in the development of real estate subdivisions.  
See Davis v. Huey
, 620 S.W.2d 561, 565 (Tex. 1981)
; City of Corsicana v. Zorn
, 97 Tex. 317, 78 S.W. 924, 925 (1904)
.  “A subdivision developer is generally free to amend restrictions in covenants for the subdivision prior to the sale of lots in the subdivision, assuming the amendments do not violate public policy.“ 
 Youssefzadeh,
 131 S.W.3d at 644; 
see also Hill v. Trigg, 
286 S.W. 182, 183 (Tex. Comm'n App. 1926, judgm't adopted).  However, the sale of subdivision lots usually triggers amendment mechanisms set forth in the dedication.  
Dyegard,
 39 S.W.3d at 313.  When the power to amend the land use restriction is reserved to the developer, the amendment of a restrictive covenant must be in the precise manner authorized by the dedicating agreement.  
Id.

“Generally, landowners have the unilateral or ‘ex parte’ right . . . to impose any restrictions they choose, to alter or cancel restrictions, or to abrogate them in their entirety, so long as no lots . . . have been sold.”  
Id
.  While in some restrictions the power to amend covenants and restrictions may be reserved to the developer, any amendments must be in the exact manner provided in the dedication.  
Id.
  We look to the restrictions to see if three conditions have been met.  We must determine who has the right to amend the restrictions and the method for amending them; whether the amendment corrects, improves, or reforms the restrictions rather than destroying them; and whether the amendment is illegal or against public policy.  
Id. 

“A ‘restrictive covenant’ is a negative covenant that limits permissible uses of land.”  
Voice of Cornerstone Church Corp. v. Pizza Prop. Partners, Inc.
, 160 S.W.3d 657, 665 (Tex. App.—Austin 2005, no pet.).  The covenant attaches and burdens the land in one of two ways: “as a covenant that runs with the land at law or as an equitable servitude.”  
Id.
  A covenant runs with the land if 1) it touches and concerns the land, 2) it relates to a thing in existence or specifically binds the parties and their assigns, 3) the original parties to the covenant intended it to run with the land, and 4) the successor to the burden has notice of the restriction/covenant.  
Id.

When we look at the restrictions for this Addition we see the following language:

[Declarant] does hereby impress upon said property the following restrictive covenants which will 
run with the land 
and shall be 
binding
 on all persons claiming under it, as well as upon all persons to whom may own, lease or occupy said land or any part thereof for a term of fifty (50) years from the date that this Declaration is recorded. [Emphasis added.]

By section 16 of the restrictions, each lot owner gives the Developer a power of attorney—a unilateral right to perform any act on behalf of other owners for a three-year-period ending on the 
earlier
 of the third anniversary of the 
filing
 of the plat dedication or when the developer 
no longer owns 
lots within the subdivision.  Section 17 declares that these covenants and restrictions “shall run with and bind the land . . . for a term of fifty (50) years.”  Section 18 states that the Developer can make amendments to the plat, covenants, and restrictions during this same three-year-period.  After the three-year-period expires, approval of seventy percent of the lot owners is required before any amendment can be effective.  Section 26, called “Common Open Space,” includes, but is not limited to, designated parks, common access easements, and common areas provided by the Developer or the Association.  Section 27 establishes the homeowners’ association once seventy to ninety percent of the homes are constructed.  Mandatory membership in the Association exists for each lot owner.  Once the Association is created and the organizational meeting held, the Association “shall be responsible for and assess reasonable and appropriate fees for the maintenance of the Common Open Space.“

The Addition’s amended final replat of September 23, 1994 preserved the prior provisions of the original plat, stating that ”[a]ll private open spaces, Lot 39, Block 2 and median and the 20 foot strip along Lot 41, Block 2, will be 
owned
 and maintained by the Homeowners’ Association of Caldwell’s Creek Addition as defined in the deed restrictions.”  [Emphasis added.] 

By the fall of 1999, seventy percent of the lots in the Addition had been sold; the Developer called an association organizational meeting on October 13, 1999 and established an interim homeowners’ association board.  The Association’s articles of incorporation were filed on October 14, 1999.  The first annual meeting was called November 9, 1999, at which time the officers and board members were elected.

At about this same time, the Developer was in the process of creating The Villas.  The Villas development was located along the eastern border of the Addition and was comprised of less expensive, zero lot line patio homes. 

In the fall of 1999, the Developer approached the Association about merging with The Villas’ association and giving The Villas access to the Association’s common areas.  The Association indicated it would consider a contractual arrangement giving access to its open and common areas to The Villas in exchange for some proportionate responsibility for the maintenance costs of these areas.  The Developer never pursued this offer.

Instead, on December 17, 1999 the Developer unilaterally, and without the consent of the Association, executed an easement agreement in favor of The Villas, granting it free and uninterrupted pedestrian access from The Villas to John McCain Road via a twenty-foot-wide strip running in a northerly direction along the eastern edge of the Addition’s common areas.  The Easement Agreement was executed by the Developer’s Managing Partner, purportedly on behalf of both the Developer and The Villas.  The Developer then removed the pre-existing wooden privacy fence that had segregated the Addition from The Villas.  Counsel for The Villas notified the Association of the Easement Agreement by letter dated March 15, 2000 that enclosed a copy of the agreement, notified the Association of The Villas’ (or the Developers’)  intent to construct a lower brick and wrought iron fence along its border with the Addition, and warned the Association not to interfere.

Then, on January 21, 2000 the Developer executed a special warranty deed, purporting to convey Lots 39, 40A, and 41A of Block 2 of the Addition, the common areas along the eastern and southern borders of the Addition, to the Association.  However, the deed made the conveyance subject to the purported December 17 easement for the benefit of The Villas. 

From the record, we can determine that the original dedication and recording of the plat for this Addition occurred on May 9, 1994.  Thus, we conclude, as did the trial court in findings of fact ten and eleven, that on May 9, 1997 the three-year-period during which the Developer could amend the plat or the dedication and restrictions without seventy percent of the lot owners’ approval had expired.
(footnote: 5)  Thus, by the time the Developer attempted to convey any interest in the Addition to The Villas it had already lost the right to amend the restrictions without at least seventy percent of the homeowners’ approval.  Appellants do not contend that they obtained approval of seventy percent of the lot owners for any amendments to the restrictions or authority to convey any portion of or any interest in the lots that had been previously dedicated to or for the use and benefit of the Addition.

Additionally, the record shows that litigation between the Developer and the City of Colleyville regarding Lots 40 and 41, Block 2 had concluded such that those lots had been returned to the subdivision released from the obligation to commit those lots for use as a future park.  The Developer filed an amended replat in 1998 returning these lots to their prior use to be “owned and maintained” by the Association.  The amended corrected replat filed on January 13, 1999 contains the following language:

All private open space, Lot 39, Block 2 [formerly Lots 40 and 41,  Block 2] and Median at Caldwell Creek Drive will be owned and maintained by the Homeowners Association of Caldwell’s Creek Addition as defined in the Deed Restrictions. 

Appellants argue that the trial court erred in concluding that the plats, dedication, and restrictive covenants, along with the amended replats, 
conveyed
 the common areas to the Association as found by the trial court in conclusion of law one.  Appellants contend that these instruments are not instruments of conveyance and that, therefore, the Association does not “own” or control the common areas.

Under these facts, the actual legal ownership of the common areas is irrelevant.  The primary issue is whether the Developer, in 1999, retained the right to unilaterally amend the plat or create and burden the common areas for the benefit of a different association by granting it an easement.  The answer is “No.”  Restrictive covenants that run with the land, such as these, generally burden and govern all lots within the subdivision to which they were intended to apply.  
See generally Evans v. Pollock
, 796 S.W.2d 465, 466 (Tex. 1990) (explaining implied reciprocal negative easement doctrine).  Additionally, according to Texas statute, express designations establishing the methods for extending, adding, or modifying such restrictions control over other statutory provisions for same.  
Tex. Prop. Code Ann.
 § 204.003 (Vernon Supp. 2004-05).  Thus, only if the Developer followed the specific procedure for amending the restrictions or the plat as set forth in the covenants could it have had the right to create such an easement for the benefit of some entity or owner other than the Association and its lot owners.  
See Miller v. Elliott
, 94 S.W.3d 38, 43 (Tex. App.—Tyler 2002, pet. denied).  Unchallenged findings of fact twenty-three and twenty-four find that neither the easement nor the deed were recorded with the required seventy percent approval of lot owners.  Thus, conclusion of law six, which invalidates the easement created for the benefit of The Villas, and conclusion of law eight, which invalidates the deed to the Association subject to the easement, are proper.  

Additionally, regardless of ownership, the lots comprising the common areas were and are subject to the restrictive covenants created by the original dedication and restrictions as well as any amendments to them.  Once an association shows that a plan or scheme exists for the benefit of all lot owners, it has shown a right to enforcement of such covenants and restrictions.  
McCart v. Cain
, 416 S.W.2d 463, 465 (Tex. App.—Fort Worth 1967, writ ref’d n.r.e.).  Thus, we agree with the trial court that these lots were dedicated as open space common areas to be maintained for the benefit of the Association and lot owners and at the expense of the Association.  Additionally, we note that the trial court concluded in conclusion of law three that when lots are conveyed with “reference to a plat, the designation of any recreational areas for the exclusive use of lot owners become part of the deed by incorporation by reference,” citing 
Anderson v. McRae, 
495 S.W.2d 351, 359 (Tex.  App.—Texarkana 1973, no writ).  This is a correct statement of law.  Issues one, three, and four are overruled.

C.  Estoppel in Pais

In appellants’ second issue, they contend the trial court erred in rendering  judgment based upon the theory of estoppel in pais because there were no pleadings to support this theory in the Association’s live pleading at the time of trial.  Appellants also complain that the evidence is legally and factually insufficient to support the trial court’s conclusion that estoppel in pais “precludes Raman Chandler Properties, L.C. and Caldwell’s Creek, Ltd. from granting easement rights that affect the rights to the common areas in the Caldwell’s Creek Addition, or from granting access rights to others” when the evidence shows purchasers relied on representations regarding the common areas, complaining of findings of fact fifteen and sixteen, and conclusions of law nine and ten.

1.  Supplemental Pleading—Procedural Question

Addressing the procedural complaint first, we note that appellants point to the first time the issue of estoppel in pais was specifically asserted:  in the Association’s written final argument filed with the trial court.
(footnote: 6)  We agree that this was the first time the theory was raised.  However, as appellants acknowledge, the Association also filed a supplemental petition on November 10, 2003, a few weeks after trial, that specifically set forth its estoppel in pais theory.  Appellants contend, however, that the pleading should be struck because the Association failed to seek leave to file its supplemental answer post-trial as required by rule 63.  
Tex. R. Civ. P.
 63. 

Leave to file an amended or responsive pleading is required under rule 63.  But rule 63 does not apply to this situation; rule 67 on amendments to conform pleadings to issues tried by consent applies.  
Tex. R. Civ. P.
 63, 67.  Rule 67 likewise requires leave to file.  
Tex. R. Civ. P.
 
67.  However, appellants made no objection to the Association’s trial amendment.  Failure to object at trial preserves nothing for review on appeal.  
Tex. R. App. P.
 33.1; 
Wright v. Pino
, 163 S.W.3d 259, 263 (Tex. App.—Fort Worth 2005, no pet.)
; City of Denton v. Mun. Admin. Servs., Inc.
, 59 S.W.3d 764, 773 n.6 (Tex. App.—Fort Worth 2001, no pet.).  Further, when it is clear that the parties tried a theory by consent, such as occurred here, we will not disregard it on appeal.  
See Compass Bank v. MFP Fin. Servs., Inc., 
152 S.W.3d 844, 854-55 (Tex. App.—Dallas 2005, pet. denied);
 Frazier v. Havens
, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th
 Dist.] 2003, no pet.)
; Mitchell v. LaFlamme
, 60 S.W.3d 123, 133 (Tex. App.—Houston [14th
 Dist.] 2000, no pet.)
.

The Association asserted its estoppel theory as a bar to appellants’ right to convey the lot owners’ and the Association’s rights away.  The Association claimed that appellants made representations to prospective lot owners, who comprise the Association, by virtue of the recorded plats, the deed restrictions, marketing materials, and testimony of one of the lot owners that specified areas would be maintained for the common use and benefit of all the lot owners.  In other words, people purchased lots in this particular subdivision in reliance on the proposed development as represented to prospective purchasers in all of these materials.  This evidence and testimony were admitted without objection.  We therefore conclude that this theory was tried by consent, that the trial court did not err in allowing an amendment to include the estoppel theory, and that we may consider this theory on appeal as well.  
See Reed v. Wright
, 155 S.W.3d 666, 670 (Tex. App.—Texarkana 2005, pet. denied).  This portion of appellants’ second issue is overruled.

2.  Sufficiency Challenge to Estoppel in Pais Theory

Turning to appellants’ sufficiency complaints, we have defined estoppel in pais as a principle preventing one party’s conduct—which induces another to act in a particular manner—from allowing it to adopt an inconsistent position and thereby cause loss or injury to another party.  
Super Wash, Inc. v. City of White Settlement
, 131 S.W.3d 249, 260 (Tex. App.—Fort Worth 2004, pet. granted).  “The linchpin for equitable estoppel is equity-fairness.”  
Id. 
 “Estoppel is defensive in character, and its function is to preserve rights, and not to bring into being an independent cause of action.” 
 Alamo Cmty. Coll. Dist. v. Browning Constr. Co.
,131 S.W.3d 146, 160 (Tex. App.—San Antonio 2004, pet. filed) (citing 
Hermann Hosp. v. Nat'l Standard Ins. Co.
, 776 S.W.2d 249, 254 (Tex. App.—Houston [1st Dist.] 1989, writ denied)).

Appellants complain of legal and factual insufficiency of the evidence to support findings fifteen and sixteen and conclusions of law nine and ten, all relating to the Association’s estoppel theory.  Appellants say the evidence does not support the trial court’s conclusions that the lot owners retained the exclusive rights to the common areas and that these exclusive rights were an inducement to prospective buyers to purchase lots in the Addition.  Likewise, they contend the evidence does not support a finding that Steve McGee, a lot owner who testified about the representations and factors he considered in purchasing a lot, was induced to purchase his lot based upon the amended plat and what it showed.  The record, however, supports the trial court’s findings.

Testimony showed that appellants provided prospective lot purchasers with plats and brochures showing the common areas.  Likewise, the plats admitted into evidence showed dedicated common areas for the “use and benefit” of the lot owners.  Applying the appropriate legal and factual sufficiency standards of review, we conclude that there is more than a scintilla of evidence to support appellee’s estoppel in pais theory and that the evidence is not so weak or the evidence to the contrary so overwhelming that the answer should be set aside.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Garza
, 395 S.W.2d at 823.  We overrule appellants’ second issue.

D.  Attorneys’ Fees

In appellants’ fifth and sixth issues they challenge the trial court’s award of attorneys’ fees to the Association under both sections 37—declaratory judgments—and 38—for claimants for services rendered, labor or material supplied, or breach of oral or written contracts—of the civil practices and remedies code.  
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 37.009, 38.001 (Vernon 1997).  These issues challenge conclusion of law eleven that awarded the Association its attorneys’ fees under 
both
 provisions. 

Appellants appear to contend that the Association is not entitled to attorneys’ fees because it had not sought true declaratory relief as described by chapter 37 of the civil practices and remedies code.  
Id. § 
37.009.  In particular, appellants contend that the Association did not seek a declaration of its rights under a deed, but only sought to defeat a deed signed by appellants.  Additionally, appellants contend that the Association’s efforts to void the deed signed by appellants or to determine the Association’s authority as the proper association in light of appellants’ actions, do not require a declaration of the Association’s rights or authority.  We disagree.

The determination of the propriety of an award of attorneys’ fees is a question of law to be determined by the court.  
Willis v. Donnelly
, 118 S.W.3d 10, 45 (Tex. App.—Houston [14th
 Dist.] 2003, pets. granted).  “We review a trial court's conclusions of law de novo as legal questions.”  
Hawkins v. Ehler
, 100 S.W.3d 534, 542 (Tex. App.—Fort Worth 2003, no pet.); 
Boyd v. Boyd
, 67 S.W.3d 398, 404 (Tex. App.—Fort Worth 2002, no pet.); 
Hitzelberger v. Samedan Oil Corp.
, 948 S.W.2d 497, 503 (Tex. App.—Waco 1997, pet. denied).  Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  
Boyd
, 67 S.W.3d at 404.

Chapter 37 authorizes courts to determine “rights, status, and other legal relations” and to make such declarations in either an affirmative or negative form.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 37.003(a), (b).  A person interested 

under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Id. 
§ 37.004(a).  This provision, however, is not to be construed as limiting or restricting the exercise of the “general powers conferred . . . in any proceeding in which declaratory relief is sought.”  
Id. 
§ 37.003(c).  In such declaratory actions, a trial court has discretion to award attorneys’ fees to any of the parties.  
Id.
 § 37.009; 
Ridge Oil Co. v. Guinn Invs., Inc.
, 148 S.W.3d 143, 161-62 (Tex. 2004); 
Bocquet v. Herring
, 972 S.W.2d 19, 20-21 (Tex. 1998).

These provisions clearly authorize a trial court to interpret the rights, obligations, and duties of both a developer of a subdivision and the resulting homeowners’ association that is ultimately created under the developer-created plat, restrictive covenants, and deeds.  The trial court’s findings of fact clearly set forth and declare the rights of the Developer, the lot owners, and the  Association.

For example, finding of fact five finds that “[t]he Dedication and Restrictions set forth the time and manner in which the homeowner’s [sic] association for Caldwell’s Creek Addition was to be formed.”  Also, finding of fact six finds that “[p]ursuant to the Dedication and Restrictions, easements are reserved as shown on the recorded subdivision plat.”  Likewise, findings of fact  ten and eleven find that the Developer’s power of attorney to “exercise, or perform any act . . . in connection with, or relating to the Dedication and Restrictions . . . .  [or] to sign, execute, acknowledge, deliver, or record any instruments which modified the terms of the Dedication and Restrictions expired” on May 9, 1997.  This date is long before the Developer’s December 17, 1999 attempt to create the Easement Agreement granting rights to adjacent landowners of The Villas, by virtue of that purported easement or by the deed executed by the Developer “subject to” such easement.  These findings necessarily include a “declaration” of the rights of the Association, the lot owners, and the Developer.

Appellants challenge none of the trial court’s findings of fact that clearly declare the rights, duties, and powers of the parties to this suit and ultimately support the trial court’s conclusion of law eleven—that the Association is entitled to recover attorneys’ fees under the declaratory judgments act.  Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.  
Samuelson v. United Healthcare of Tex., Inc
., 79 S.W.3d 706, 708 (Tex. App.—Fort Worth 2002, no pet.); 
see also McGalliard, 
722 S.W.2d at 696; 
Reliance Ins. Co.
, 999 S.W.2d at 629.  Since none of the findings that declare the rights of the parties to this litigation are challenged in connection with the award of attorneys’ fees and we conclude that those findings support the trial court’s legal conclusion that attorneys’ fees could be awarded, we conclude the trial court properly granted the Association its attorneys’ fees under the declaratory judgments act.  We overrule appellants’ fifth issue.

Under appellants’ sixth issue, they challenge the propriety of any award to the Association for its attorneys’ fees under chapter 38 of the civil practices and remedies code.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001.  We note, however, that the final judgment awarded appellee its attorneys’ fees under 
both
 chapters 37 and 38 of the code.  Because we have already determined that the award of attorneys’ fees was appropriate under at least chapter 37 of the code as set forth in conclusion of law eleven, it is unnecessary for us to also determine whether the award was appropriate under chapter 38.  
See 
Tex. R. App. P.
 44.1(a); 
see also
 
Loaiza v. Loaiza
, 130 S.W.3d 894, 904 (Tex. App.—Fort Worth 2004, no pet.).  Because the judgment for attorneys’ fees is supportable under at least one of the Association’s theories, we overrule appellants’ sixth issue.

V.  Conclusion

Having overruled all of appellants’ issues on appeal, we affirm the judgment of the trial court.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED:  September 22, 2005

FOOTNOTES
1:
Raman Chandler Properties, L.C. was one of the named defendants in the trial court below.  We note, however, that both Raman Chandler Properties, L.C. and Raman Chandler Properties, Inc. have executed documents that were admitted at trial by the Developer.  Neither party has challenged Raman Chandler Properties, L.C.’s role or capacity in this litigation, so we do not address any issue relative to that party’s participation in the case.

2:
Although appellants failed to designate which conclusions they were challenging in this issue, we interpret this issue as a challenge to conclusions of law one and three.

3:
Although appellants failed to designate which conclusions they were challenging in this issue, we interpret this issue as a challenge to conclusions of law four, six, and eight.

4:
Although appellants failed to designate which conclusions they were challenging in this issue, we interpret this issue as a challenge to conclusions of law six and eight.

5:
The record does not reflect when each of the lots was sold or whether they were all ever sold.  Thus, we will presume the three-year-period ran on May 9, 1997 since the parties agree on that date as being “the earlier” date upon which the Developer’s right to amend the plat expired.  In any event, trial court’s finding of fact four states that the dedication and restrictions for the Addition were filed on May 9, 1994, and agreed to an unchallenged finding of fact ten states that the Developer’s authority to exercise the power of attorney contained within the dedication expired on May 9, 1997.

6:
The trial court instructed the parties to submit their closing arguments to the trial court in written form.