

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

## NO. 02-10-00367-CV

| | |
|---|---|
| WILLIAM H. ALEXANDER AND DORA ALEXANDER | APPELLANTS |

V.

| | |
|---|---|
| JOE HUGHES, PHIL JOHNSON, RANDY CATLIN, DAVID MARTSTON, TOM FITZGERALD, RAY BOUTWELL, THOMAS E. VENHAUS, BLAINE KIDWELL, MARK KYLE, JEANETTE BITNER, TAMY KIGON, AND ROBERT J. WILSON | APPELLEES |

----------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellants, William H. and Dora Alexander, appeal the trial court's judgment notwithstanding the verdict (JNOV), contending in one issue that the evidence supports the jury's verdict finding that appellants' carport conforms with

---

[1]*See* Tex. R. App. P. 47.4.

the applicable deed restrictions of their neighborhood. We reverse the trial court's JNOV and render judgment for appellants.

## Background Facts

Appellants own a house in the Park Place Addition (Park Place) of Iowa Park, Texas. The dispute underlying this case arose after they built a carport in front of their house. Appellees are several homeowners in Park Place who sued appellants for violating the Park Place deed restrictions.

While preparing to build the carport, appellants contacted Tommy Key— one of the original Park Place developers and the sole remaining developer and member of the Park Place architectural committee at that time—to obtain the architectural committee's approval, which the deed restrictions require for construction projects. After discussing the anticipated carport with William Alexander, Key said he approved if the next door neighbors approved, and he either waived the deed restrictions' requirement that appellants submit written plans or told William that plans were not needed "at this time." After appellants began constructing the carport, one of the appellees contacted Key and advised him that he thought the carport was going to violate the deed restrictions.[2] Key called William and asked him to stop construction of the carport until the issue could be resolved; by that time appellants had already begun construction. William declined to stop, saying "he was too far along."

---

[2]Key was not sure who contacted him, but he thought it might have been Joe Hughes or Phil Johnson.

Appellees, as Key's designees, sued appellants, claiming that the carport violated Section 21 of the Park Place deed restrictions, which provides, "<u>Fences</u>. No fences, enclosure, or part of any building of any type or nature whatsoever shall be constructed, erected, placed, or maintained closer to the front line than the front building setback line applicable and in effect to each lot . . . ."

At trial, William admitted that the carport extended at least fifteen feet in front of the twenty-five foot front yard setback line.[3] During the charge conference, appellees asked the trial judge to include in the jury charge an instruction that the "applicable and in effect" setback line referenced in section 21 of the deed restrictions is twenty-five feet, the setback line set forth in section 613.3 of the Iowa Park zoning ordinance. Appellants opposed the request, arguing the applicable setback line is the five-foot carport setback line in sections 601.2(P)(3) and 613.2(D) of the zoning ordinance. The trial court granted appellees' motion and instructed the jury that, as a matter of law, the only applicable setback line is twenty-five feet: "The front building setback line set forth in section 21 of the Deed Restrictions is the Minimum Front Yard Setback of 25' set forth in section 613.3 of the City of Iowa Park Zoning Ordinance." Appellants objected to the charge, but the trial court overruled the objection.

The jury nevertheless returned a verdict in appellants' favor. Appellees moved for a new trial or JNOV, contending that the evidence that the carport

_____

[3]Another witness testified that the carport extended "[a]bout 18 feet" past the twenty-five foot front yard setback line.

extended past the twenty-five foot building setback line was undisputed. After a hearing on the motions, the trial court granted appellees' JNOV motion and rendered a final judgment for appellees that included a mandatory injunction directing appellants to remove the carport.

In this appeal, appellants contend that the trial court erred by granting appellees' JNOV motion and by construing the restrictive covenants in a manner that incorporates section 613.3(E), but not sections 601.2(P)(3) and 613.2(D), of the zoning ordinance.

**Appellants' Issue**

Appellants' sole issue is that "the trial court erred in granting [appellees'] Motion for [JNOV] because, under any appropriate analysis, [a]ppellants' carport did not violate the deed restrictions." According to appellants, the trial court's JNOV turned on its erroneous interpretation of the phrase, "front building setback line applicable and in effect to each lot," in section 21 of the deed restrictions; in other words, but for the trial court's erroneous interpretation of the deed restrictions, it would never have determined that the evidence is legally insufficient to support the jury's finding that the carport does not violate the deed restrictions because the evidence is undisputed that the carport does not extend past the five foot setback line in sections 601.2(P)(3) and 613.2(D) of the zoning ordinance.

## Standards of Review

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury's findings on issues necessary to liability or if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). In determining whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review. *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

Evidence supporting a jury's verdict is legally insufficient only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support a finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228

S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

## Interpretation of Restrictive Covenants

We review a trial court's interpretation of a restrictive covenant de novo. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowner's Ass'n*, 178 S.W.3d 384, 390–91 (Tex. App.—Fort Worth 2005, pet. denied). We construe restrictive covenants in accordance with general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Raman Chandler*, 178 S.W.3d at 391; *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 309 (Tex. App.—Fort Worth 2001, no pet.).

When construing contracts and other written instruments, our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth, 2007, no pet.). To ascertain the parties' intent, we must examine and consider the entire contract in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Potter*, 230 S.W.3d at 463. Courts should be particularly wary of isolating individual words, phrases, or clauses and reading them out of context. *Beaston*, 907 S.W.2d at 433. Instead, "[w]e must construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a

construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Dist., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). In addition, we examine all writings relating to the same transaction. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999); *Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 857 (Tex. App.—Fort Worth 2009, pet. denied) (holding that to ascertain parties' intent, all writings relating to the same transaction are examined, harmonized, and given effect).

In analyzing words in a contract, we give them their ordinary, generally accepted meanings unless the contract itself shows that the terms have been used in a technical or different sense. *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458–59 (Tex. App.—Fort Worth 2009, pet. denied). A specific contractual provision controls over a general provision. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. App.—Fort Worth 2008, pet. dism'd). Lack of clarity or a disagreement among the parties as to the contract's interpretation does not render it ambiguous. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *see also Leake v. Campbell*, 352 S.W.3d 180, 184 (Tex. App.—Fort Worth 2011, no pet.) (holding that disagreement over interpretation of restrictive covenant does not make it ambiguous). Rather, whether "a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Universal Health Servs.,*

121 S.W.3d at 746; *see also Raman Chandler*, 178 S.W.3d at 391; *Dyegard Land P'ship*, 39 S.W.3d at 308–09. "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law." *Frost Nat'l Bank*, 165 S.W.3d at 312; *see also Pilarcik*, 966 S.W.2d at 478; *Raman Chandler*, 178 S.W.3d at 391. An unambiguous restrictive covenant should be liberally construed to give effect to its purpose and intent. Tex. Prop. Code Ann. § 202.003(a) (West 2007); *Dyegard Land P'ship*, 39 S.W.3d at 308–09.

**Analysis**

Although section 21 of the Park Place deed restrictions does not expressly reference the city zoning ordinance, both parties construe the phrase, "the front building setback line applicable and in effect to each lot," as referring to the applicable regulations set forth in the zoning ordinance. They simply dispute which part of the zoning ordinance applies.

Section 6 of the deed restrictions states, "No residential building shall be located nearer to the front line . . . than the minimum setback required by the subdivision regulations of the City of Iowa Park, Texas." Key testified that the intent behind section 6 was to adopt setback provisions of the City of Iowa Park "to the extent that we [the developers] said." Thus, the deed restrictions contain no setback lines of their own; they defer to the zoning code.

Section 613.3(E) of the zoning ordinance for the residential zone in which appellants' property is located states, "All structures shall have not less than a

8

twenty-five (25) foot front yard setback." Iowa Park, Tex., Code of Ordinances ch. 14, art. 14.03, Ex. A, art. VI, § 613.3(E) (2010). The Park Place plat also has a twenty-five foot building setback line drawn on it. However, section 613.2(D) of the zoning ordinance, which applies to the same residential zone, provides that carports must comply only with section 601.2(P), which sets a setback line of five feet. *Id*. §§ 601.2(P), 613.2(D) (2010). Appellants' carport extends between fifteen and eighteen feet past the twenty-five foot front yard setback line listed in section 613.3(E) of the zoning ordinance; thus, it terminates about seven to ten feet away from the property's front curb and is within the five-foot carport setback line provided in section 601.2(P)(3).

Appellees contend that the "front building setback line" referenced in section 21 for "fences, enclosure[s], or part[s]" of buildings unambiguously refers to the "front yard setback line" applicable to "structures" in general set forth in section 613.3(E) of the zoning ordinance, and they read the phrase "any building of any type or nature whatsoever" in section 21 as encompassing carports, thus subjecting carports to the twenty-five foot front yard setback line described in section 613.3(E) of the zoning ordinance. Appellants, on the other hand, interpret the phrase "front building setback line applicable and in effect to each lot" as encompassing not only the setback line in section 613.3(E) but also any of the more specific setback lines for certain types of structures contained in the zoning ordinance. Thus, if the zoning ordinance prescribes a more specific setback line other than the general one for "structures" in section 613.3(E), then

9

under section 21 of the deed restrictions, the more specific setback line would apply.

Much of appellees' interpretation of section 21 turns on their contention that the phrase "front building setback line" is a term of art that is synonymous with the phrase "front yard setback line" used in the ordinance. But the term "front building setback line" is not used anywhere in the zoning ordinance. Additionally, the deed restrictions do not define "front building setback line" as a synonym of "front yard setback line," nor do they in any other way link the two phrases. We find no indication in the deed restrictions that the term "front building setback line" is used in the technical manner proposed by appellees. *See Doe*, 283 S.W.3d at 458–59. Section 301 of the zoning ordinance to which the deed restrictions apply defines "building line" as "[a] line established beyond which no part of a building shall project, *except as otherwise provided by this ordinance*." Iowa Park, Tex., Code of Ordinances ch. 14, art. 14.03, Ex. A, art. III, § 301 (2010) (emphasis added).

Appellees' technical interpretation of the term has an exclusionary effect on other provisions in the deed restrictions. If section 21 establishes a setback line beyond which no structure, including residential structures in general, may extend, then the explicit setback restriction for residential structures under section 6 is unnecessary; such an interpretation would have the effect of simply restating section 6, rendering it or section 21 superfluous and meaningless. *See*

*Pilarcik*, 966 S.W.2d at 479; *Alpert v. Riley*, 274 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (op. on reh'g).

Appellees nevertheless contend that section 21 augments section 6; this argument disregards the topical distinction between the two sections. Section 6 begins, "No residential building . . . ." According to section 2 of the same deed restrictions, a residential building is one that is "designed and intended for occupancy by a single family." Section 6 then goes on to describe the setback line for that type of structure. Section 21, on the other hand, does not mention residential buildings. Instead, by its very wording, it is intended to apply to structures that are typically appurtenant to residential buildings, such as fences or outbuildings. *See Nicol v. Gonzales*, 127 S.W.3d 390, 395 (Tex. App.—Dallas 2004, no pet.). Appellees' argument that section 21 was meant to emphasize and clarify section 6 is not evident from a reading of the entire document; appellees point to no language in the deed restrictions showing that section 21 was intended to augment section 6. *See Alpert*, 274 S.W.3d at 288.

Reading the deed restrictions in their entirety, the phrase, "front building setback line applicable and in effect to each lot," as used in section 21 means that *all* applicable setback lines in the ordinance, including those that carve out different setback lines applicable only to specific structures, such as "fences, enclosure[s], and other part[s]" of buildings, apply to property in Park Place. Thus, the undisputed evidence that appellants' carport does not extend past the five foot carport setback line in section 601.2(P) of the zoning ordinance supports

11

the jury's verdict that the carport does not violate the Park Place deed restrictions.[4]  We conclude and hold that the trial court improperly granted the JNOV because the evidence at trial supports the jury's verdict.  We therefore sustain appellants' sole issue on appeal.

## Conclusion

Having sustained appellants' sole issue on appeal, we reverse the JNOV and render judgment for appellants in accordance with the jury's verdict.[5]  *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 834 (Tex. 2009).

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED:  February 23, 2012

---

[4]Because appellants objected to the trial court's inclusion of the instruction in the charge stating that the twenty-five foot setback applies to the carport, we are not bound to consider the instruction given in our sufficiency analysis.  *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003).

[5]The jury's verdict included an award of $7,812.50 for attorney's fees. Appellees did not file a separate notice of appeal challenging that award.