

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00244-CV

BARNES S.W. PLAZA, LLC                                                APPELLANT

V.

WF RETAIL INVESTMENTS LLC                                          APPELLEE

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Barnes S.W. Plaza, LLC (Barnes) appeals the trial court's final judgment, which incorporates its grant of Appellee WF Retail Investments, LLC's (WF Retail) motion for partial summary judgment. In its sole issue, Barnes contends that the trial court erred by finding that a restrictive covenant did not apply to the property owned by WF Retail. We will affirm.

----

[1]See Tex. R. App. P. 47.4.

## II. BACKGROUND

WF Retail is the owner of property located in Wichita County (Parcel I) which includes a vacant building that was once used as a Safeway grocery store. Barnes is the owner of property located adjacent to and west of Parcel I (Parcel II).

Sometime after acquiring Parcel I, WF Retail applied for a building permit for construction in order to renovate the vacant building on its property for use as a nightclub. After learning of WF Retail's plans, Barnes filed suit against WF Retail in an effort to restrain WF Retail from using Parcel I for such purposes. In support of its claim for injunctive and declaratory relief, Barnes relied on a restrictive covenant contained in an agreement between the previous owners of the respective properties, arguing that the covenant prohibited WF Retail from using the property for a nightclub business.[2]

---

[2]In its original petition, Barnes also argued that WF Retail's intended use would violate city code by requiring more parking spaces than available, which would constitute a substantial breach of the restrictive covenant. But on appeal, Barnes merely alludes to this argument in a paragraph contained within his overall issue of whether the subject restriction was intended to burden Parcel I as well as Parcel II. In its brief, however, WF Retail provides an argument that the intended use would not violate city code because there is actually a surplus of parking spaces necessary to meet the city code requirements. To the extent that Barnes may have attempted to raise this subissue on appeal, because he provides us with no authority or analysis as a guide, the issue is insufficiently briefed, and we will not address it. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (appellate courts have discretion to waive argument due to inadequate briefing); *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 893 S.W.2d 92, 106 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (declining to perform independent review when appellant failed to provide argument sufficient to make appellate complaint viable).

In response to Barnes's suit, WF Retail filed a motion for partial summary judgment, arguing that it was entitled to judgment as a matter of law because the intended use for a nightclub was not prohibited on Parcel I. The trial court granted the motion and later entered its final judgment, finding that the restrictive covenant at issue provides in clear and unambiguous language that Parcel II is burdened with the restriction but that the same restriction does not apply to Parcel I. Thus, the trial court concluded, WF Retail is not prohibited by said restrictive covenants from any use which might involve a nightclub on Parcel I.[3]

The subject agreement, titled "Easements with Covenants and Restrictions Affecting Land (ECR)," was executed by Barnes's predecessor in title, J. Phillips Cunningham (Developer), and by WF Retail's predecessor in title, Safeway Holdings, Inc. (Safeway). In relevant part, the agreement provides:

**C.   TERMS**

. . .

**2.   Buildings.**

. . .

   **(b)   Separation of uses:** Developer recognizes Safeway's customers' need for adequate parking facilities in close proximity to its Parcel I premises, and the importance of protecting such parking facilities against unreasonable or undue encroachment which is likely to result from long-term parking by patrons or employees of certain types of business establishments. Developer further recognizes Safeway's interest in not having tenants occupying

---

[3]Although not at issue in this case, the trial court also concluded in its final judgment that the mutual parking easements in the agreement are not violated by WF Retail's proposed use of the property.

3

space in close proximity to the Parcel I premises who create or cause excessive noise, litter or odor. To safeguard Safeway's interest in a clean, quiet and odor free environment and adequate parking for its customers, Developer covenants and agrees that it shall not permit the use or operation of any portion of Parcel II, within 250 feet of any exterior building wall of any Parcel I building for a restaurant (fastfood or sit-down) or entertainment or recreational activities such as, but not limited to, bowling alleys, theaters, carnivals or other places of public or private amusement.

. . .

**11. Rights of Successors. The easements, restrictions,** benefits, and obligations hereunder shall create mutual benefits and servitudes upon Parcels I and II running with the land. This agreement shall bind and inure to the benefit of the parties hereto, their respective heirs, personal representatives, tenants, successors, and/or assigns. The singular number includes the plural and any gender includes all other genders.

The parties do not dispute that both WF Retail and Barnes, as successors in title to the original drafters, are bound by the subject agreement or that the subject restriction's terms include the use of the property for a nightclub business. Thus, Barnes's sole issue on appeal is whether the restrictive covenant prohibiting the use of property for a nightclub applies to Parcel I.[4]

### III. DISCUSSION

Barnes contends that the trial court erred by granting summary judgment in favor of WF Retail based on the trial court's finding that a restrictive covenant did not apply to Parcel I. Specifically, Barnes claims that "[t]here was an intentional mutuality between the parties as to the creation, duration and enforcement of the

---

[4]*See supra* note 2, at 2.

4

subject restrictive covenant" and that therefore the restriction applies to both Parcel I and Parcel II. We disagree.

## A. Summary Judgment Standard of Review

In a summary judgment case, we must decide whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

## B. Enforcement and Interpretation of Restrictive Covenants

In order to claim or enforce a restrictive covenant on another's land, the party claiming the restriction must show that it was for the benefit of its land. *McCart v. Cain*, 416 S.W.2d 463, 465 (Tex. Civ. App.—Fort Worth 1967, writ ref'd n.r.e.). In every case where parties seek to enforce a restrictive covenant, the burden of proof is upon them to establish that the defendant's land was in fact burdened with such restriction and that such restriction was imposed upon the defendant's land for the benefit of the land owned by the plaintiff. *Webb v. Voga*, 316 S.W.3d 809, 813 (Tex. App.—Dallas 2010, no pet.). In this case, the trial court interpreted the restrictive covenant at issue to benefit WF Retail's land and not Barnes's land.

We review a trial court's interpretation of a restrictive covenant de novo. *Leake v. Campbell*, 352 S.W.3d 180, 184 (Tex. App.—Fort Worth 2011, no pet.). For a court to construe a covenant as a matter of law, it must be unambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A covenant is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Leake*, 352 S.W.3d at 184. Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous. *Leake*, 352 S.W.3d at 184.

We construe restrictive covenants in accordance with general rules of contract construction. *Pilarcik*, 966 S.W.2d at 478; *Leake*, 352 S.W.3d at 184.

As when interpreting any contract, the court's primary task is to determine the drafter's intent from the instrument's language. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). In ascertaining the drafter's intent, we must examine the covenant as a whole in light of the circumstances present when the covenant was made. *Pilarcik*, 966 S.W.2d at 478. Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction; words and phrases used in the covenant must be given their commonly accepted meaning. *Wilmoth*, 734 S.W.2d at 657–58; *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 308 (Tex. App.—Fort Worth 2001, no pet.). All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it. *Wilmoth*, 734 S.W.2d at 657–58; *Dyegard*, 39 S.W.3d at 308–09. Finally, an unambiguous restrictive covenant should be liberally construed to give effect to its purpose and intent. Tex. Prop. Code Ann. § 202.003(a) (West 2007); *Leake*, 352 S.W.3d at 184.

### C.   Analysis

The restrictive covenant at issue appears to be written solely for the benefit and in the interest of WF Retail's predecessor in title—Safeway. In the paragraph regarding prohibited uses, Barnes's predecessor in title—Developer— is the only party undertaking any obligation to refrain from using its parcel for entertainment or recreational activities; the covenant states that "*Developer covenants and agrees that it shall not permit the use or operation of any portion*

7

*of Parcel II* . . . for . . . entertainment or recreational activities. . . ." (emphasis added). According to the commonly accepted meaning of the covenant's language, Safeway is the beneficiary of Developer's promise not to use its specifically named parcel—Parcel II—for uses that would include a nightclub business.

Further, the covenant at issue clarifies the drafters' intent to benefit Safeway by stating the purpose of Developer's promise not to use its property for entertainment or recreational activities. The pertinent section of the agreement emphasizes that it is only Safeway's interest that is being recognized and that the covenant prohibiting use of the property for entertainment or recreational activities was made in order to safeguard Safeway's interests in maintaining an environment that would be agreeable to Safeway's customers and beneficial to Safeway's grocery store business. Being Safeway's successor in title, WF Retail is entitled to the same interests under the covenant's terms. But the covenant makes no mention of Developer's interest or of any mutuality in the promise not to use the property for entertainment or recreational activities. Thus, the covenant unambiguously imposes a unilateral obligation on Developer and its successors.

Barnes seems to suggest that the "Rights of Successors" section near the end of the agreement creates a mutual obligation for every covenant in the agreement, including the covenant at issue. But this portion of the agreement appears to merely demonstrate the drafters' intent that the covenants in the

agreement were to run with the land, thereby obligating subsequent owners of each parcel.[5] It therefore does not appear to create a catch-all provision imposing a mutual obligation with respect to every covenant. Thus, the restrictive covenant at issue appears to have a definite or certain meaning, and it is therefore unambiguous as a matter of law.

Because the language of the agreement demonstrates that the covenant prohibiting use of the property for a nightclub was intended for the benefit of WF Retail's predecessor in title and to assign an obligation solely to the owner of Parcel II, we agree with the trial court's conclusion that the restriction at issue does not apply to Parcel I, and WF Retail is not prohibited from using its property for a nightclub business.

---

[5]A restrictive covenant may bind a successor to a burdened piece of land if the covenant runs with the land. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. denied). A requirement to establish that a covenant runs with the land is that the original parties to the covenant must intend it to run with the land. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). This intent may be evidenced by language in the covenant agreement stating that the obligations therein are to "run with the land" or that the covenants bind the drafters' "successors and assigns." *See Montfort v. Trek Res., Inc.,* 198 S.W.3d 344, 355 (Tex. App.—Eastland 2006, no pet.); *Raman Chandler Props., L.C.*, 178 S.W.3d at 391. The question of whether a covenant runs with the land goes to a successor's right to enforce the covenant. *See Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 666 (Tex. App.—Austin 2005, no pet.). Because the parties in this case do not dispute the issue, we assume without deciding that the covenant runs with the land and that Barnes may enforce the agreement as a whole. The only issue we must resolve is whether the restrictive covenant prohibiting use for entertainment and recreational activities actually burdens WF Retail's property.

Barnes also argues that both parcels are subject to the deed restrictions on a mutual basis under the doctrine of implied reciprocal negative easements. But the doctrine of implied reciprocal negative easements applies when an owner of real property subdivides the property into lots and sells a substantial number of those lots with restrictive covenants designed to further the owner's general plan or scheme of development. *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990). Here, there is no evidence that the subject parcels resulted from a prior subdivision or that a substantial number of lots contain similar restrictive covenants that further a general plan or scheme of development, and therefore the doctrine of implied reciprocal negative easements does not apply to this case. Consequently, we maintain our conclusion that the covenant prohibiting use of the property for entertainment or recreational activities does not apply to Parcel I.

Thus, because we conclude that the restrictive covenant at issue does not apply to Parcel I, Barnes has failed to create a genuine issue of material fact, and WF Retail was entitled to judgment as a matter of law. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of WF Retail.

## IV. Conclusion

Having overruled Barnes's sole issue on appeal, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED: August 30, 2012