John COATS and Shahin Coats, Appellants,

v.

FARMERS INSURANCE EXCHANGE, Appellee.

No. 14–04–00686–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 29, 2006.

J. Brantley Durrett, III, Houston, for appellants.

Sheryl W. O'Briant, Levon G. Hovnatanian, Christopher W. Martin, Kevin Graham Cain, Melinda Lacy Mcgehee, Houston, for appellees.

Panel consists of Justices HUDSON, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this case of first impression, appellants, John and Shahin Coats, appeal a summary judgment in favor of appellee,

Farmers Insurance Exchange, contending the trial court erred (1) by granting summary judgment because the homeowner's insurance policy in question is either ambiguous or Farmers expressly agreed to remit an amount not to exceed policy limits for each loss sustained during the policy period; and (2) by concluding that appellants' claims under former Article 21.55 of the Texas Insurance Code fail as a matter of law. We affirm in part and reverse and remand in part.

## BACKGROUND

Farmers issued a homeowner's insurance policy to appellants on July 30, 2000. The policy was effective from July 30, 2000 to July 30, 2001, and the policy limits were $138,000 for damage to the dwelling, $82,800 for loss to contents within the dwelling, and $27,600 for loss of use including alternative living expenses (ALE). On or about April 18, 2001, appellants filed an insurance claim for hail and water damage to their roof. By letter dated May 9, 2001, Farmers informed appellants that the costs to repair the damage did not exceed the $1,000 policy deductible. On June 14, 2001, appellants filed another claim for water and roof damage to their home that occurred as a result of Tropical Storm Allison. After first issuing a denial, Farmers re-opened the claim and discovered several water sources had caused damage to the home. Among those sources were a leak in the air-conditioning and heating system (HVAC), several leaks in the roof, and a hot tub leak. During March 2002, Farmers determined appellants' residence was a total loss and paid the policy limits of $138,000 for the dwelling and $27,600 for ALE. Farmers paid $37,671.69 under the contents coverage. During July 2002, appellants filed another claim in which they alleged an HVAC overflow had caused water and mold damage to the dwelling. Farmers investigated the claim and determined the damage allegedly caused by HVAC overflow was considered when appellants received the policy limits.

During December 2002, appellants sued Farmers for nonpayment of the subsequent HVAC claim. Appellants pursued causes of action for breach of contract, negligence, gross negligence, violations of the Texas Deceptive Trade Practices Act, violations of articles 21.21 and 21.55 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Farmers filed a motion for summary judgment contending there were no genuine issues of material fact because Farmers paid appellants the policy limits. Appellants responded that they are entitled to receive a sum not to exceed policy limits for each source of damage. Appellants seek reversal of the trial court's order granting summary judgment in favor of Farmers.

## STANDARD OF REVIEW

Under the traditional standard for summary judgment, the movant has the burden to prove there is no genuine issue of material fact and judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In reviewing a grant of summary judgment, we take as true all evidence favorable to the nonmovant and consider all reasonable inferences in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). Interpretation or construction of an unambiguous written instrument is a matter of law to be determined by the trial court. *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 617–18 (Tex.App.-Dallas 1991, no writ). When the controversy can be resolved by proper construction of an unambiguous document, rendition of summary judgment is appropriate. *Moody v. Moody Nat'l Bank*, 522 S.W.2d 710, 715

(Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.).

■ Insurance policies are subject to the same rules of construction as other contracts. *Nat'l Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex. 1995). The primary concern of the court is to ascertain the true intent of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). The simple fact that the parties advance conflicting interpretations of the contract does not make it ambiguous. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 465 (Tex.1998). If an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). When interpreting an insurance policy, a court should not isolate a single phrase, sentence, or section and consider it separately from other provisions. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995).

### LIMIT OF LIABILITY

■ The policy form under consideration is a standard Homeowners Form B, which is prescribed by the Texas Department of Insurance. Appellants contend the phrase *"any one loss"* that appears under the first sub-heading of "SECTION 1–CONDITIONS" entitled "Insurable Interest and Limit of Liability" creates an ambiguity or expressly requires Farmers to remit an amount not to exceed the declared limit of liability for each loss sustained during the policy period. Appellants also argue that omission of reinstate-ment clauses for losses caused by perils other than fire supports their contention that the policy is ambiguous or the carrier expressly agreed to remit policy limits for each loss (other than fire) regardless of the number of losses during the policy period. Farmers contends there is no ambiguity when the policy is read and interpreted as a whole and refers this court to language under the fourth sub-heading of "SECTION 1–CONDITIONS" entitled "Loss Settlement." The language in both sub-headings is set forth verbatim for consideration in context:

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in *any one loss:*

a. to the insured for more than the amount of the insured's interest at the time of the loss; or

b. for more than the applicable limit of liability.

Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

4. **Loss Settlement.** Covered property losses are settled as follows:

\* \* \* \* \*

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost cover-

age, *but our payment will not exceed the smallest of the following:*

(1) *the limit of liability under this policy applicable to the damaged or destroyed building structure(s);*

(2) the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

(3) the amount actually and necessarily spent to repair or replace the damaged building structure(s).

(Emphasis added).

Following the rules of construction, we consider the contract as a whole and read all of the provisions together. Accordingly, we must consider the **"Loss Settlement"** provisions in conjunction with the **"Insurable Interest and Limit of Liability"** provisions. We attempt to find harmony in the contract, notwithstanding appellants' proposed interpretation of the phrase *"any one loss."*

The state courts of Texas have not previously decided this issue; however, appellants refer this court to authority from a sister state wherein the court concluded that the subject phrase creates an ambiguity because the insurance carrier did not include specific language limiting payment to the declared amount regardless of the number of claims made during the policy period. *O'Bryan v. Columbia Ins. Group,* 274 Kan. 572, 56 P.3d 789 (2002). Reading the policy as a whole, we reject the notion that omission of such language creates an ambiguity. *See Beaston,* 907 S.W.2d at 433. Generally, insurable interest clauses

describe who will be entitled to receive payments if more than one insured person or corporation has equitable or legal title to the insured property. When considered in context of the heading and language that follows, the phrase *"any one loss"* refers to a scenario where two or more insured persons or corporations are disputing allocation of loss payments. In other words, Farmers will be required to pay an amount not to exceed the applicable limit of liability to be allocated between the insureds as their interests appear. Accordingly, we find no ambiguity in the policy provisions under consideration.

The general rule relative to payment of the limit of liability is that policy proceeds should be applied to indemnify the insured up to the amount of the policy, fulfilling the objective that the insured should neither reap economic gain, nor incur a loss, if adequately insured. *Vest v. Gulf Ins. Co.,* 809 S.W.2d 531, 534 (Tex.App.-Dallas 1991, writ denied). The policy unambiguously entitled appellants to the smaller of two amounts: either (1) the limit of liability, or (2) the cost to repair or replace the home. It is undisputed that Farmers paid the limit of liability; therefore, Farmers fulfilled its contractual obligation by paying the declared limit of liability.[1] Appellants' first issue is overruled.

INSURANCE CODE VIOLATION

In their second issue, appellants contend the trial court erred by rendering summary judgment for Farmers on the appellants' claims under article 21.55 of the Texas Insurance Code. We note that appellants agree their other insurance code

---

1. Three federal district courts, applying Texas law, have interpreted identical language in insurance policies under identical challenges from homeowners. Each court found the limit of liability was absolute. *Maricle v. State Farm Lloyds,* No. CA–C–03–386–H, 2004 WL 1224632 (S.D.Tex. May 21, 2004); *Ra-* *mirez v. State Farm Lloyds,* No. CA–C–02–359–H, 2004 WL 612862 (S.D.Tex. Jan.27, 2004); *Moore v. State Farm Lloyds,* No. A–02–CA–591–SS, 2003 WL 23391420 (W.D.Tex. Apr.1, 2003). Although we are not bound by the decisions in those courts, we find their reasoning persuasive.

claims fail as a matter of law if the declared policy limits are applied on a per policy rather than a per claim basis. They argue, however, that Farmers violated article 21.55 when it delayed the payment it did make to appellants under the policy. Former article 21.55, section 6, of the Texas Insurance Code prescribed penalties if the insurer unreasonably delays payment of a valid claim. Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.3, 1991 Tex. Gen. Laws 939, 1043–1045 (repealed and recodified 2003) (current version at TEX. INS.CODE ANN. §§ 542.051–.061 (Vernon Supp. 2005)).[2]

■ Farmers argues appellants waived this issue by not urging it in their response to the motion for summary judgment. Farmers moved for summary judgment on appellants' article 21.55 claims. However, appellants can challenge the trial court's summary judgment based on Farmers' alleged failure to prove there is no genuine issue of material fact without having expressly asserted this argument in response to Farmers' traditional motion for summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). Because appellants contend the trial court erred in denying their article 21.55 claim as a matter of law, we interpret appellants' second issue as an attack on the legal sufficiency of Farmers' summary judgment proof on this ground. *See D.M. Diamond Corp. v. Dunbar Armored, Inc.,* 124 S.W.3d 655, 659 (Tex. App.-Houston [14th Dist.] 2003, no pet.).

■ Appellants made the original claim in April 2001. Farmers did not make partial payment until March 2002, almost a year later. Article 21.55 requires the insurer to notify a claimant in writing of the

acceptance or rejection of a claim not later than the fifteenth business day after the date the insurer receives all items necessary to secure final proof of loss. TEX. INS.CODE ANN. ART. 21.55 § 6. If an insurer, after receiving all items necessary to secure proof of loss, delays payment beyond the period of time specified by applicable statutes, or if the statutes do not specify a period, delays payment for more than sixty days, the insurer is required to pay an eighteen percent penalty on the amount due plus attorney's fees. TEX. INS.CODE ANN. art. 21.55 § 6.

■ A defendant moving for summary judgment has the burden of proving there is no material issue of fact relative to the plaintiff's cause of action. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476–77 (Tex.1995). Regarding traditional motions, the burden of introducing evidence to avoid summary judgment shifts to the non-movant only if the movant's evidence meets the criteria under Texas Rule of Civil Procedure 166a(c) and negates all genuine issues of material fact with respect to an essential element of the non-movant's cause of action. *White v. Wah,* 789 S.W.2d 312, 315 (Tex.App.-Houston [1st Dist.] 1990, no writ). Appellants assert that they filed a claim in April 2001, which Farmers did not pay until March 2002. To successfully maintain a claim under article 21.55, section 6, a party must establish three elements: (1) a claim under an insurance policy; (2) the insurer is liable for the claim; and (3) the insurer has failed to follow one or more provisions of article 21.55 with respect to the claim. *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 291 (Tex.2001). Considering the three claimed dates of loss or sources of loss, we hold Farmers failed to present conclusive

---

**2.** Article 21.55 was repealed and recodified effective April 1, 2005. However, the former article 21.55 is applicable to this case. We will hereafter refer to the pertinent sections as they were previously codified.

proof refuting appellants' article 21.55 claims. Because the trial court erred in rendering summary judgment on these claims, appellants' second issue is sustained.

Accordingly, we reverse that portion of the trial court's order granting summary judgment in favor of Farmers on appellants' claims under former article 21.55 of the Insurance Code, and remand for proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.