

## MEMORANDUM OPINION

No. 04-09-00028-CV

**ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCIATION, INC.**, et al.,
Appellants/Cross-Appellees

v.

Phil **MESZLER**, et al.,
Appellees/Cross-Appallents

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 06-0010-CV
Honorable Dwight E. Peschel, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  February 10, 2010

AFFIRMED IN PART, REVERSED IN PART

This appeal stems from the trial court's determination that Zuehl Airport Flying Community Owners Association (the Association) improperly increased the owners' monthly assessments under the Declaration of Covenants, Conditions and Restrictions for Zuehl Airport Flying Community (the Declaration). On appeal, the Association asserts the assessments complied with Section 3(c) of the Declaration and the trial court erred in awarding attorneys' fees under the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 37.010 (Vernon 2008). In a cross-appeal, Appellees Phil Meszler, Mike Mosel, Gary Tennison, Duane Golding, and Stan Ferris (the Members), argue that the trial court erred in failing to make additional declarations and in awarding the Association attorneys' fees following the denial of a temporary injunction. We reverse the trial court's order with regard to the award of attorneys' fees to Cross-Appellee Zuehl Airport Flying Community Owners Association, Inc., and we affirm the order in all other aspects.

## BACKGROUND

Zuehl Airport Flying Community is a subdivision development located in Guadalupe County, Texas governed by the Declaration of Covenants and Restrictions for Zuehl Flying Community. The Association manages the common areas for the benefit of the subdivision owners. On November 12, 2005, after written notice was sent to each property owner, the Association held its annual meeting with the 2006 owner assessments as the sole agenda item.

At the time of the annual meeting, monthly assessments were set at $22.00 per month per lot. Pursuant to the Declaration, "the annual assessment may be automatically increased, effective January 1 of each year, ONE AND NO/100 DOLLARS ($1.00) per month per year without a vote of the Association." However, "[a]ny monthly assessment increase in excess of ONE AND NO/100 DOLLAR per month per year or any decrease must be approved by three-fourths (3/4) of the Directors of the Association and the Members." The Board of Directors (the Board) explained that the 2005 annual budget was $22,000.00, but the total expenditures amounted to $47,000.00. After presentation of its case, the Members voted on two different proposals. The first, increasing the monthly assessments to $50.00 per lot, failed to garner the approval of three-fourths of the Members. A second vote, to maintain the current assessment at

$22.00 per month, also failed. In light of the impasse, the Board called a Special Meeting to set the annual assessments.

At the November 22, 2005 Special Meeting, the Board was informed that the 2005 expenditures were actually $57,000.00 due to ongoing legal issues. The Board voted to increase the regular monthly assessment from $22.00 to $23.00 per month and to set a special assessment of $126.00 per quarter. In response, on January 4, 2006, several Members[1] filed Plaintiffs' Original Petition, alleging Breach of Fiduciary Duty, Breach of Contract, Unjust Enrichment, and an Application for Temporary Restraining Order and Temporary Injunction seeking to restrain the Association from establishing and collecting property assessments in what amounted to an additional $42.00 per month per lot assessment.

On January 23, 2006, the trial court held a hearing on the Members' application for temporary injunction. The trial court orally explained:

> In my reading of the Covenant, they did act without authority. They exceeded their authority, but injunction relief is equitable relief and I have seen no showing of irreparable harm or there is not an adequate remedy at law. So the request for a temporary injunction is denied.

The trial court awarded the Association $5,000.00 in attorneys' fees and dissolved the temporary restraining order. On January 30, 2006, the Association filed its original answer and counterclaims for wrongful injunction and attorneys' fees under section 5.006 of the Texas Property Code. TEX. PROP. CODE ANN. § 5.006 (Vernon 2003).

Approximately three months later, the Members filed their first amended petition, including a request for declaratory judgment. The Members also sought attorneys' fees pursuant

---

[1] During the pendency of the underlying litigation, several members were added as plaintiffs, but later nonsuited their claims. Specifically, Plaintiffs Don Weaver, Ronnie Cameron, Steve Carlson, and Don Pogue nonsuited their claims. The remaining members, Phil Meszler, Mike Mosel, Gary Tennison, Duane Golding, and Stan Farris, filed the motion for partial summary judgment, which the trial court granted.

to chapters 37 and 38 of the Texas Civil Practice and Remedies Code, and section 5.006 of the Texas Property Code. On May 30, 2007, the Members moved for a traditional partial summary judgment, arguing that the Board improperly increased assessments and requesting that the trial court make certain declarations. On September 10, 2007, the trial court granted the Members' motion for partial summary judgment, declaring that

> the additional assessment of $42.00 monthly on the real property owned by Plaintiffs, and subject to the Authority of the Zuehl Airport Flying Community Association, Inc. was invalidly assessed, and is declared void.

The trial court also awarded the Members $3,250.00 in attorneys' fees. On December 10, 2008, the trial court signed a final judgment disposing of all parties and causes of action pending before the court.

On appeal, the Association argues that: (1) the trial court erred in granting the Members' motion for partial summary judgment and holding that the assessments were invalid, and thus, void; and (2) the trial court erred in awarding the Members attorneys' fees. The Members filed a cross-appeal arguing (1) the trial court erred in not making additional declarations, specifically an order declaring the rights of the parties in relation to the Declaration as opposed to entering an order that the monthly assessment was null and void; and (2) the trial court had no authority to award the Association $5,000.00 in attorneys' fees in the temporary injunction order.

## THE DECLARATION

With respect to the first issue, the Association argues that the trial court erred in granting partial summary judgment and declaring the special assessment void because the Declaration permits the Board to set the rate of the special assessment without approval of the Members. The Members respond that the plain language of the Declaration does not allow the Association to set the rate of the special assessment without a vote of three-fourths of the Members.

**A. Standard of Review**

Appellate review of a trial court's grant of a traditional motion for summary judgment is de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). This standard is well established: (1) the movant must show "that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment," the court must take evidence favorable to the non-movant as true; and (3) the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in the non-movant's favor. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)); *see also Joe*, 145 S.W.3d at 157.

In this case, the summary judgment concerned the construction of the Declaration. We review the trial court's interpretation of restrictive covenants de novo. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 390-91 (Tex. App.—Fort Worth 2005, pet. denied). In construing restrictive covenants, we apply general rules of contract construction. *Id.* at 391. Under those general rules of contract construction, we interpret or construe unambiguous contracts as a matter of law. *Id.*; *see also Coats v. Farmers Ins. Exch.*, 230 S.W.3d 215, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Thus, when the controversy can be resolved by proper construction of an unambiguous contract, summary judgment is appropriate. *Coats*, 230 S.W.3d at 217; *see also Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied).

Further, in construing a written contract, we must ascertain and give effect to the parties' intentions as expressed in the four corners of the document. *Frost Nat'l Bank v. L & F Distribs.,*

*Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam). "We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement." *Id.* at 312. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). With these principles in mind, we turn to the language of the Declaration.

*1. The Assessment*

The relevant portion of Section 3 of the Declaration, entitled "Maintenance and Other Assessments," reads as follows:

> Each Owner of any Lot in the Subdivision shall be subject to assessment whether or not such is expressed in the Deed or other evidence of conveyance, and each Owner is deemed to covenant and agree to pay the Developer or the Association after transfer from the Developer the following:
>
> (a) Annual or monthly assessments or charges;
> (b) Special assessments for capital improvements imposed by a vote of three-fourths (3/4) of the Board of Directors and Members; and
> (c) Any other sum to the extent they are specifically provided elsewhere in this instrument, or in the Deed or other evidence of conveyance.
>
> Such assessments or charges are to be established and collection made as herein provided. . . . Without limiting the foregoing, the total assessments accumulated by the Association shall be applied toward the payment of all taxes, insurance premiums, repair, maintenance costs, collection and disposing of garbage, ashes, rubbish and materials of a similar nature; payment of legal and all other expenses incurred in connection with the collection, enforcement and administration of all assessments and charges in connection with enforcement of this Declaration; . . .
> *It is understood that the judgment of the Board of Directors, with three-fourths (3/4) vote of the Directors, in establishing annual assessments, special assessments and other charges for the items set forth above and in the expenditure of said funds shall be final and conclusive so long as said judgment is exercised in good faith.* In addition and with a vote of three-fourths (3/4) of the Directors and of the Members, assessments may be made for any or all of the following purposes: lighting, building improvements, improving easements, sidewalks, taxiways, runways, paths, parks and parkways, and in acquiring and

maintaining any amenities or recreational facilities that may be operated in whole or in part for the benefit of the Owners and tenants in the Subdivision.

(emphasis added).

The Association claims that the foregoing language specifically permits a special assessment for legitimate expenses and legal fees by a three-fourths vote of the Directors, so long as the Board acts in good faith. The Association points out the absence of any evidence of bad faith.

In response, the Members direct us to the section of the Declaration pertaining to the setting of assessments:

### BASIS AND MAXIMUM LEVEL OF ASSESSMENTS

For the purpose of this section, Hangar Lots and Lots shall be treated in the same manner. Until the end of December 1998, the maximum monthly assessment shall be FIFTEEN AND NO/100 DOLLARS ($15.00) per assessed Lot and/or Hangar Lots owned. From and after such one year period, the annual assessment may be automatically increased, effective January 1 of each year, ONE AND NO/100 DOLLARS ($1.00) per month per year without a vote of the Association. *Any monthly assessment increase in excess of ONE AND NO/100 DOLLAR per month per year or any decrease must be approved by three-fourths (3/4) of the Directors of the Association and the Members.*
. . . .

### SPECIAL ASSESSMENTS FOR CAPITAL IMPROVEMENT

In addition to the assessment authorized above, the Association may levy a special assessment applicable to a certain period only, for the purpose of defraying, in whole or in part, the cost of any construction, or unexpected repair or replacement of a particular capital improvement located in or upon the Common Area, including any necessary fixtures and personal property related thereto, *provided that any such assessment shall have the written approval of three-fourths (3/4) of the Directors and the Members.*

### ASSESSMENT

For the purpose of this section Lots and hangar Lots shall be treated in the same manner . . . On or before the 30th day of November each year, *the Directors of the Association and Members with a three-fourths (3/4) vote, shall fix the amount of the monthly assessments to be levied against each Lot in the next calendar year, if such assessments are different from the annual assessment as automatically increased.*

(emphasis added).

*2. Analysis*

The language on which the Association relies relates to how the Board decides *to spend* the assessments, not how the assessments are *set*. The Board is authorized to act with three-fourths vote of the Directors, "in establishing annual assessments, special assessments and other charges *for the items set forth above and in the expenditure of said funds* shall be final and conclusive so long as said judgment is exercised in good faith." (emphasis added). The covenant provides that the Members cannot challenge *how* the Board spends the assessments so long as the Board expends the funds (1) on one of the items listed and (2) acts in good faith.

The subsequent provisions specify the procedures for increasing the annual and special assessments. Specifically,

(1) the annual assessment may be automatically increased by $1.00 per month per year without a vote of the Association;

(2) any monthly assessment increase in excess of $1.00 per month per year or any decrease must be approved by three-fourths of the Directors of the Association and the Members; and

(3) any special assessment, which must be applicable to a certain period, must have the written approval of three-fourths of the Directors and the Members

A clear reading of these provisions provides that any increase in the amount of assessment per month by more than $1.00 or setting of a special assessment, requires approval by three-fourths of the Board and the Members. The required procedures were simply not followed in this case. The Members never voted to levy the special assessment and the special assessment was not limited to a certain time period as required by the Declaration.

The Association argues that the Declaration does not provide for the situation wherein "three-fourths vote could not be obtained for any rate of assessment." We disagree. According to the section entitled "Basis and Maximum Level of Assessment," the annual assessment may

be increased by $1.00 per month "without a vote of the Association." Only an increase or a decrease of more than $1.00 per month or a special assessment requires approval by three-fourths of the Board and Members.

We hold that the trial court did not err in granting the partial summary judgment and in holding that the assessment increase was invalid and, therefore, void.

## C. Attorneys' Fees

In its order granting partial summary judgment, the trial court declared "that the additional assessment of $42.00 monthly on the real property owned by [the Members], and subject to the authority of the Zuehl Airport Flying Community Owners Association, Inc., was invalidly assessed, and is declared void." The trial court then awarded the Members $3,250.00 in attorneys' fees. The Association argues that the trial court erred in awarding the Members' attorneys' fees because the Members declaratory judgment action "was void," and "any attempt to collect attorneys' fees by posturing the right to fees by way of a declaratory judgment was also void." In response, the Members argue that they also pled for attorneys' fees under section 5.006 of the Texas Property Code, which allows the trial court to award attorneys' fees in a breach of restrictive covenant action.

The basis for the Members' motion for partial summary judgment was the Association's breach of the Declaration, and the relief sought was a litany of declarations pertaining to the invalid assessments, and attorneys' fees. In order to grant the requested declaratory relief, the trial court had to find that the Association breached the Declaration thereby entitling the Members to their attorneys' fees pursuant to section 5.006 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 5.006 (Vernon 2003) ("In an action based on breach of restrictive covenant pertaining to real property, the court shall allow to a prevailing party . . . attorney's fees.").

Likewise, the Declaratory Judgments Act provides that the trial court, in its discretion, may award attorneys' fees provided that the fees are reasonable, necessary, equitable, and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008).

The Association argues that a "declaratory judgment is not appropriate when a controversy is already pending and the declaratory judgment simply answers the claims and asks for no relief outside the scope of the main suit." Thus, the Association argues that because the Members breach of contract action was already pending when they filed their amended petition adding their declaratory judgment action, the declaratory judgment action was improper. We are not persuaded by this argument. The existence of another adequate remedy such as a breach of contract action does not preclude a declaratory judgment. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). In this case the declaratory relief sought was not a means to obtain otherwise *impermissible* attorneys' fees, it was a means of obtaining the quickest and most effective relief pertaining to the improper assessments. *See Raman Chandler Prop., L.C.*, 178 S.W.3d at 397 (evaluating a restrictive covenant declaration determining "the trial court properly granted the Association its attorneys' fees under the declaratory judgments act."); *but cf. Janicek v. 2016 Main Owners Ass'n, Inc.*, No. 01-96-00599-CV, 1997 WL 414951, at *5 (Tex. App.—Houston [1st Dist.] July 24, 1997, no writ) (mem. op., not designated for publication) ("The Association's pleadings were insufficient as a pleading for declaratory judgment attorney's fees."). We hold that the trial court did not err in granting attorneys' fees in its order granting partial summary judgment.

**CROSS-APPEAL – TEMPORARY INJUNCTION**

In their cross-appeal, the Members argue that the trial court erred in failing to make their additional requested declarations and in awarding the Association attorneys' fees following the temporary injunction hearing.

## A. Requested Declaration

The purpose of a declaratory action is to establish existing rights, status, or other legal relations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.001-.011 (Vernon 2008); *see also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993). The trial court's order provides:

> [T]his Court . . . is of the opinion that the [Members] should have the relief to which they are entitled;
>
> IT IS THEREFORE the declaration of this Court that the additional assessment of $42.00 monthly on the real property owned by the [Members], and subject to the Authority of the Zuehl Airport Flying Community Owners Association, Inc., was invalidly assessed, and is declared void.

The Members requested an order providing, inter alia, that (1) the Association acted improperly, (2) the assessment is null and void, (3) the Association must credit the over-payment to the owner's accounts, (4) the Association was not authorized to make the special assessment, and (5) the Association may not assess fees for non-payment of the special assessment. A plain reading of the trial court's order encompasses the relief requested by the Members.

> Black's Dictionary defines "void" as:
>
> Null; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended. [citation omitted] An instrument or transaction which is wholly ineffective, inoperative, and incapable of ratification and which thus has no force or effect so that nothing can cure it. [citation omitted]

BLACK'S LAW DICTIONARY 1573 (6th ed. 1990).  When an action is declared void, "it is as if it did not exist because it has no effect from the outset."  *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  Although the Members seek a more specific declaration from the trial court, the request would require a trial court to detail the consequences flowing from a void order, and we decline to require to the trial court to make such a detailed declaration.  We hold the trial court did not err in refusing to make the additional declarations.

## B.  Attorneys' Fees

After granting the Members' application for a temporary restraining order and signing an order that restrained the Association from establishing and collecting the newly increased property assessments, the trial court held a hearing on the Members' application for a temporary injunction.  While the trial court agreed that the Association's Board had exceeded its authority in raising the amount of assessments, it denied injunctive relief because the Members had not shown that they would be irreparably harmed or that they lacked an adequate remedy by appeal.  The trial court then awarded $5,000.00 to the Association in attorneys' fees.

On appeal, the Members argue that the trial court erred in awarding the Association attorneys' fees, because no legal authority allows a trial court to award attorneys' fees as a result of the denial of an application for temporary injunction.  The Members emphasize that under the "American Rule," absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees.  *See MBM Fin. Corp.*, 292 S.W.3d at 669 ("Texas has long followed the 'American Rule' prohibiting fee awards unless specifically provided by contract or statute."); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299,

311 (Tex. 2006) ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees.").

In response, the Association first argues that the Members have waived this issue on appeal because they voluntarily paid the attorneys' fees. The Association, however, does not cite to any legal authority to support this assertion and fails to present a legal argument under Texas Rule of Appellate Procedure 38.1(i). TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). As such, we hold this argument is without merit.

The Association next responds that the trial court did not err in awarding attorneys' fees because the Members were liable for damages (including attorneys' fees) caused by the wrongfully obtained temporary restraining order. The Texas Supreme Court has stated that a "person who obtains an injunction wrongfully is liable for damages caused by issuance of the injunction." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685 (Tex. 1990). The Association further argues that in *Groschke v. Gabriel*, 824 S.W.2d 607, 615 (Tex. App.─Houston [1st Dist.] 1991, writ denied), the First Court of Appeals affirmed a trial court's determination that "part of the Gabriels' attorneys' fees were the damages resulting directly from the issuance of the temporary injunction." There is a notable distinction present in this case. The Association did not seek damages for the "wrongful" entry of the temporary restraining order until after the injunction hearing and issuance of the trial court's order awarding the attorneys' fees. We are further constrained in analyzing the attorneys' fee issue by the lack of a reporter's record from the injunction hearing. There is simply no evidence in the record to support an award of attorneys' fees at the temporary injunction hearing. Accordingly, because there is no basis in the

record for an award of attorneys' fees to the Association at the temporary injunction hearing, the trial court erred in awarding such fees.

## CONCLUSION

Because the Association acted without authority under the Declaration, the trial court did not err in granting the partial summary judgment and in granting attorneys' fees in favor of Appellees Phil Meszler, Mike Mosel, Gary Tennison, Duane Golding, and Stan Ferris. Additionally, because the trial court declared the Association's actions void, the court was not required to make further declarations detailing the consequences of the improper assessment. Finally, the trial court had no basis for its award of attorneys' fees to the Association resulting from the temporary injunction hearing. Accordingly, we reverse the trial court's judgment with regard to the attorneys' fee award of $5,000.00 to Appellants/Cross-Appellee Zuehl Airport Flying Community Owners Association and affirm the trial court's judgment in all other aspects.

Rebecca Simmons, Justice