



# MEMORANDUM OPINION

No. 04-09-00256-CV

Darren S. **FALLIS** and wife Stacy D. **FALLIS**,
Appellants

v.

**RIVER MOUNTAIN RANCH PROPERTY OWNERS ASSOCIATION, INC.**,
Appellee

From the County Court at Law, Kendall County, Texas
Trial Court No. 07-307-CCL-A
Honorable Bill R. Palmer, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  July 7, 2010

AFFIRMED IN PART; REVERSED IN PART

The prior tortured procedural history of the underlying cause between Darren S. and

Stacy D. Fallis ("the Fallises") and River Mountain Ranch Property Owners Association, Inc.

("the Association") is detailed in this court's opinion in *In re Fallis*, No. 04-08-00781-CV, 2009

WL 262119 (Tex. App.—San Antonio Feb. 4 2009, orig. proceeding) (mem. op.) (per curiam).

In this appeal, the Fallises challenge a series of orders in which the trial court: (1) granted the

Association's amended motion for partial summary judgment, which asserted lack of standing

and limitations as to several of the Fallises' claims, (2) granted a subsequent motion for summary judgment as to the Fallises' declaratory relief claim relating to a Water Well Easement, and (3) severed all of the Fallises' claims from the Association's declaratory relief claim relating to a Mailbox Easement. The Fallises also seek to challenge the trial court's order denying their motion for summary judgment on their declaratory relief claims. After providing a factual context for this appeal, we will first consider what claims are properly before this court before addressing the merits of the trial court's rulings.

### FACTUAL BACKGROUND

Properties of the Southwest, Inc. developed a residential subdivision known as River Mountain Ranch in Kendall County, Texas. After developing the subdivision, Properties of the Southwest, Inc. filed a Declaration of Covenants, Conditions, and Restrictions ("the restrictive covenants") in the Kendall County records in October of 1996. In pertinent part, the restrictive covenant prevents any building of any kind from being built on "any five (5) acre or larger tract nearer than twenty-five (25) feet to the side property line or no nearer than one hundred (100) feet to any public road or no nearer than fifty (50) feet to the rear property line." The Association subsequently became the property owners association of the subdivision.

In 1998, a Mailbox Easement and Water Well Easement from Properties of the Southwest, Inc. to the Association were filed of record. After these easements were filed, the Association installed postal mailboxes and a structure over the mailboxes on land covered by the Mailbox Easement.

In 2004, the Fallises purchased Lot 28A in the subdivision. The deed to Lot 28A was subject to the restrictive covenants, the Mailbox Easement, and the Water Well Easement. Three years after they acquired the property, the Fallises informed the Association that the structure

over the mailboxes violated the restrictive covenants and the Mailbox Easement, and they demanded the Association remove the structure. The Association refused to comply with the Fallises' demand and subsequently filed suit against the Fallises on February 3, 2007, seeking a declaratory judgment and attorney's fees. In response, the Fallises filed their original answer and counterclaims, alleging multiple causes of action against the Association.

Both the Association and the Fallises each asserted a claim for declaratory relief regarding the Mailbox Easement, seeking a declaration that the Mailbox Easement either did or did not allow the Association to build and maintain the structure over the mailboxes. The Fallises also asserted two additional claims for declaratory relief: (1) a claim seeking a declaration that the Water Well Easement did not allow the Association to remove and use water from the well; and (2) a claim seeking a declaration that the structure over the mailboxes violated the restrictive covenants. In addition to their declaratory relief claims, the Fallises also sought injunctive relief, asking the trial court to: (1) order the Association to remove the structure over the mailboxes; and (2) prohibit the Association from interfering with the use and ownership of the water well and underground water on the Fallises' lot. Lastly, the Fallises asserted claims for: (1) breach of contract, contending the Association breached both the restrictive covenants and the Mailbox Easement by installing the structure over the mailboxes; (2) trespass, contending the placing and maintaining of the structure over the mailboxes constituted a trespass on the Fallises' property; and (3) breach of fiduciary duty and fraud, contending the Association breached its fiduciary duty to the Fallises, who are members of the Association, by violating the restrictive covenants and the Mailbox Easement.

Both parties moved for summary judgment on independent grounds. The Fallises' second amended motion for summary judgment sought summary judgment as to all of their

claims for declaratory relief. The Association's amended motion for partial summary judgment alleged it was entitled to summary judgment because: (1) the Fallises lacked standing to bring a suit for breach of contract or tort; and (2) the Fallises' claims for unauthorized use of an easement, breach of restrictive covenants, breach of contract, trespass, breach of fiduciary duty, and fraud were barred by the applicable statutes of limitations.[1] The Association's motion expressly recognized that the motion did not address the Fallises' claim for declaratory relief regarding the Water Well Easement. After a hearing, the trial court granted the Association's motion for partial summary judgment. Notwithstanding the motion's express recognition that the motion did not address at least one of the Fallises' claims, the trial court's order provided the Fallises "take nothing against [the] Association, and that all claims asserted by [the Fallises] against [the Association] are hereby denied."

Thereafter, the Association filed an additional motion for summary judgment and motion to sever. The motion alleged the Association was entitled to summary judgment with regard to the Fallises' Water Well Easement claim because the Water Well Easement was clear and unambiguous and gave the Association the right to use water from the existing well. The Association also moved for a severance, asserting, "If this motion for summary judgment is granted, the Association as Counter-Defendant will have no further causes of action to defend itself against. Therefore, the Association hereby moves for a severance of any remaining issues that exist as to the declaratory action originally filed by the Association."

After another hearing, the trial court signed three orders. First, the trial court denied the Fallises' second amended motion for summary judgment. Second, the trial court granted the Association's motion with regard to the Water Well Easement. That order again provided the

---

[1] The Association's motion also addressed the Fallises' allegations of ratification, reaffirmation, waiver, and equitable estoppel; however, the Fallises' brief does not contain any challenge to the summary judgment on these allegations.

Fallises "take nothing against [the] Association, and that all claims asserted by [the Fallises] against [the Association] are hereby denied." Finally, the trial court granted the Association's motion to sever. That order stated that all of the Fallises' causes of action were "resolved by final disposition on their merits by summary judgment."

## STANDARD OF REVIEW

We review a trial court's granting of a traditional summary judgment de novo. *Valence Operation Co., v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The party moving for summary judgment bears the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more of the essential elements of the plaintiff's cause of action, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *City of Garland v. Dallas Morning News*, 222 S.W.2d 351, 356 (Tex. 2000). Once the movant establishes its right to summary judgment, the burden shifts to the respondent to present evidence that would raise a genuine issue of material fact. *Brookview Ptnrs. L.P. v. Hannah*, 260 S.W.3d 643, 645 (Tex. App.—Dallas 2008, no pet.). In reviewing an order granting a traditional summary judgment motion, we indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operation Co.*, 164 S.W.3d at 661. Where the trial court does not state the grounds upon which it granted summary judgment and, as here, several grounds are provided, then the nonmoving party on appeal must negate all grounds on which the trial court could have granted the order, and we must affirm the summary judgment if any ground would support the judgment. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

**OVERLY BROAD RELIEF AND CLAIMS SUBJECT TO APPELLATE REVIEW**

In their brief, the Fallises note the Association's amended motion for partial summary judgment expressly stated the motion did not specifically address the Fallises' declaratory relief claim regarding the Water Well Easement; however, the Fallises contend the Association's motion also did not address the Fallises' declaratory relief claims regarding the Mailbox Easement or the restrictive covenants. We agree.

In asserting the Fallises lacked standing, the Association challenged only the Fallises' claims for breach of contract or tort. In asserting the Fallises' claims were barred by limitations, the Association challenged only the Fallises' claims for unauthorized use of an easement, breach of restrictive covenants, breach of contract, trespass, breach of fiduciary duty, and fraud. The Association's motion does not address any of the Fallises' declaratory relief claims or their request for an injunction. The Association's subsequent motion addressed only the Fallises' claim for declaratory relief with regard to the Water Well Easement.

"It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding." *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex. 1983). "Granting more relief than the movant is entitled to makes the order reversible" but does not affect this court's jurisdiction to consider the order. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001). Instead, we consider all matters properly raised on appeal and reverse only those portions of the judgment rendered in error, which reversal will include those portions of the judgment disposing of causes of action that were not addressed in the summary judgment motion. *See Page v. Geller*, 941 S.W.2d 101, 102 (Tex. 1997); *Thompson v. CPN Partners, L.P.*, 23 S.W.3d 64, 68 (Tex. App.—Austin 2000, no pet.). Because the Association's motions did not address the Fallises' claims seeking

declaratory relief regarding the Mailbox Easement or the restrictive covenants or its request for an injunction in relation thereto, the trial court's order was overly broad and is reversed as to those claims.

The Fallises briefed the merits of the claim for declaratory relief regarding the Mailbox Easement based on the trial court's denial of their motion for summary judgment. However, this court is generally permitted to consider the denial of a motion for summary judgment only when the parties file competing motions. *Cullins v. Foster*, 171 S.W.3d 521, 529-30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Montgomery v. Blue Cross & Blue Shield of Tex., Inc.*, 923 S.W.2d 147, 152 (Tex. App.—Austin 1996, writ denied.). In this case, the Association did not file a competing motion for summary judgment as to the declaratory relief claim regarding the Mailbox Easement. In fact, the Association's motion does not even address that claim. Because the motions are premised differently, we are unable to consider the merits of the declaratory relief claim pertaining to the Mailbox Easement based on the trial court's denial of the Fallises' motion. *See Sarandos v. Blanton*, 25 S.W.3d 811, 814 n.5 (Tex. App.—Waco 2000, pet. denied).

## WATER WELL EASEMENT

The Fallises sought a declaration that the Water Well Easement conveys the Association the right to use only the existing waterline that is connected to the Fallises' well, and not the right to use the actual water from the well. In response, the Association moved for summary judgment on this claim, asserting the Water Well Easement gives the Association the right to use the actual water from the existing well. The trial court granted the summary judgment in favor of the Association.

We review the trial court's interpretation of easements de novo. *Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.). An easement is a non-possessory interest in property that allows its holder to use the property for a particular purpose. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002); *Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). An easement may be created by express grant, implication, necessity, estoppel, or prescription. *Machala v. Weems*, 56 S.W.3d 748, (Tex. App.—Texarkana 2001, no pet.). When, as here, an easement is created by an express grant, the scope of the easement holder's rights must be decided by the terms of the grant. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999).

To determine the meaning of an easement agreement, we apply basic rules of contract construction and interpretation. *Marcus Cable*, 90 S.W.3d at 700; *Koelsch*, 132 S.W.3d at 498. In accordance with those rules, we read the easement agreement as a whole to attain an adequate interpretation of the parties' intentions and to fulfill the purpose of the easement's creation. *Marcus Cable*, 90 S.W.3d at 701; *Koelsch,* 132 S.W.3d at 498. The language of an easement agreement must be given its plain grammatical meaning unless doing so would defeat the parties' intentions. *DeWitt County Elec. Co-op., Inc.*, 1 S.W.3d at 101. When a term in the easement agreement is not specifically defined, that term should be given its ordinary, plain, and generally accepted meaning. *Id.* Unless the language of the easement agreement is ambiguous, we rely solely on the written instrument and presume that the parties intended for every clause to have some effect. *Koelsch*, 132 S.W.3d at 498. Should the provisions of the easement agreement conflict, we harmonize them, if possible, to reflect the parties' intentions. *Id.*

Both parties agree the Water Well Easement is clear and unambiguous on its face. The Water Well Easement conveys, in pertinent part, "a perpetual, non-exclusive easement and right-

of-way for the purpose of operating, maintaining, constructing, repairing, removing, and reconstructing an existing water line . . ." to the Association along with "the right of ingress, egress and regress in, upon, along, over and through said easement for the purposes of providing water from an existing well located upon Lot 29 and for the benefit of a Sign Easement situated and located upon Lot 30." Here, the Water Well Easement expressly grants the Association the right to operate and maintain the existing water line in order to provide water for the Sign Easement. Although the Fallises contend the easement does not authorize the Association's use of the actual water from the well, we hold the Water Well Easement expressly grants the Association the right to use water from the Fallises' well. When reading the easement as a whole, the purpose of the Water Well Easement is to provide water from the Fallises' well to the waterfall pond and sprinkler system located on the Sign Easement. *See Marcus Cable*, 90 S.W.3d at 701; *Koelsch*, 132 S.W.3d at 498. Accordingly, the Association has the right to use both the actual water from the Fallises' well and the existing waterline for the purposes of transporting water to and from the items located on the Sign Easement.

Therefore, because the Water Well Easement grants the Association the right to use the actual water from the Fallises' well, the trial court did not err in granting the Association's motion for summary judgment with regard to this claim.

### NON-DECLARATORY RELIEF CLAIMS

In addition to their claims for declaratory relief, the Fallises asserted several causes of action against the Association, including breach of contract, trespass, breach of fiduciary duty, and fraud. The Association moved for summary judgment on these claims based on lack of standing and the applicable statute of limitations. On appeal, the Fallises contend the Association failed to establish lack of standing or a limitations bar with respect to each of their

claims as a matter of law, and as a result, the trial court erred in granting the amended motion for partial summary judgment.

## 1. Limitations

### a. Applicable Statute of Limitations

The Association argues the Fallises' claims were brought more than four years after the structure over the mailboxes was installed by the Association. As a result, the Association contends the Fallises' claims are barred by the applicable statute of limitations.

A four-year statute of limitations controls actions to enforce restrictive covenants. *Air Park-Dallas Zoning Committee v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 911 (Tex. App.—Dallas 2003, no pet.); *Colton v. Silsbee State Bank*, 952 S.W.2d 625, 630 (Tex. App.— Beaumont 1997, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §16.051 (Vernon 2008). "The statute accrues upon the breach of the covenant." *Colton*, 952 S.W.2d at 630.

Actions for trespass to real property claims are governed by a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2002); *Graham v. Pirkey*, 212 S.W.3d 507, 512 (Tex. App.—Austin 2006, no pet.). When the two-year period begins to accrue depends on whether the trespass was temporary or permanent in character. *See Schneider Nat'l Carriers, Inc. v. Gates*, 147 S.W.3d 264, 274-75 (Tex. 2004) (stating accrual of limitations is question of law). A trespass action for permanent injuries to land accrues upon discovery of the injury. *Id.*; *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1992, writ denied). In contrast, a trespass action may not be barred by limitations if the trespass constitutes a continuing tort. *Krohn v. Marcus Cable Assocs., L.P.*, 201 S.W.3d 876, 880 (Tex.

App.—Waco 2006, pet. denied). Under the continuing tort doctrine, a trespass is considered ongoing, and a cause of action does not accrue until the defendant's tortious conduct ceases.[2] *Id.*

A four-year statute of limitations controls actions for breach of fiduciary duty and fraud. TEX. CIV. PRAC. & REM. CODE ANN. §16.004 (Vernon Supp. 2009-2010); *McGuire v. Kelley*, 41 S.W.3d 679, 681-82 (Tex. App.—Texarkana 2001, no pet.) (noting appellate courts apply four-year statute of limitations in cases where breach of fiduciary duty claims were coupled with fraud claims). Similarly, a four-year statute of limitations governs actions for breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a) (Vernon Supp. 2002); *Rice v. Louis A. Williams & Assocs., Inc.*, 86 S.W.3d 329, 333 (Tex. App.—Texarkana 2002, pet. denied).

### b. Section 16.069 of the Texas Civil Practice and Remedies Code

The Fallises attempt to avoid the bar of limitations by asserting they filed their claims timely pursuant to section 16.069 of the Texas Civil Practice and Remedies Code. Section 16.069 states:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of the action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date of the party's answer is required.
> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (Vernon 2008). It is undisputed that the Fallises filed their counterclaim within thirty days of the date their answer to the Association's suit was required.

Given the Fallises timely filed their claims, we must next determine whether each claim arises out of the same transaction or occurrence that formed the basis of the Association's declaratory relief claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069. The purpose of

---

[2] Here, neither party describes the trespass as a continuing tort, and should we assume the trespass is permanent in nature, the two-year statute would apply.

section 16.069 is to prevent a plaintiff from waiting until an opposing party's valid claim arising from the same transaction is barred by limitations before asserting his own claim. *Oliver v. Oliver*, 889 S.W.2d 271, 273 (Tex. 1994); *Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex. App.— Tyler 2008, no pet.). In other words, section 16.069 seeks to prevent a plaintiff, like the Association, from waiting until any potential claims by the Fallises were barred by limitations before it sought an interpretation of the easement. *See id.* We apply the logical relationship test to determine what constitutes a same "transaction" by asking whether the essential facts on which the claims are based are significantly and logically relevant to both claims. *See Wells*, 261 S.W.3d at 281.

Here, the Association sought several declarations from the trial court regarding the specific authority the Mailbox Easement granted in terms of construction, repairs, rebuilding, replacements, and installation of the mailboxes. The essential facts on which the Association based its declaratory relief action are as follows: (1) in 1998, the Association filed two instruments in the Kendall County records entitled the Declaration of Covenants, Conditions, and Restrictions and the Mailbox Easement from Properties of the Southwest, L.P. to River Mountain Ranch Property Owners Association; (2) thereafter, that same year, the Association installed a structure over the mailboxes located on the easement; (3) in 2004, the Fallises purchased property in the River Mountain Ranch subdivision and now dispute the Association's authority to maintain, construct, repair, and replace any improvements on the easement.

In response, the Fallises filed a counterclaim, in which they alleged several causes of action, each based on the Association's request for declaratory relief regarding the Mailbox Easement. Here, the facts underlying both the parties' actions are closely related. The Association's request for declaratory relief focuses on outlining the authority granted in the

Mailbox Easement, and the Fallises' claims stem from the Association's alleged violation of the easement, i.e. the building and maintaining of a structure over the mailboxes. Specifically, in their breach of contract claim involving breach of restrictive covenants and unauthorized use of an easement, the Fallises contend the Association breached the restrictive covenant and Mailbox Easement by installing the structure over the mailboxes. Likewise, the Fallises asserted a claim for trespass, arguing the Association's installation and maintenance of the structure over the mailbox constitutes a trespass on their property. Finally, the Fallises contend the Association had a fiduciary duty to the Fallises which it breached by violating the restrictive covenants and Mailbox Easement when it installed the structure over the mailboxes.

Because we construe a "transaction" as flexible and involving a series of multiple occurrences logically related to one another, we conclude the Fallises' claims arise out of the same transaction as the Association's claim for declaratory relief. *See Wells*, 261 S.W.3d at 281. Therefore, given the exception to the limitations bar contained in section 16.069, the Association did not prove as a matter of law that the Fallises' claims are barred by limitations.

### 2. Standing

#### a. General Law

Subject matter jurisdiction is an issue that may be raised for the first time on appeal by the parties or the court. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004). Standing is a necessary component of subject matter jurisdiction. *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 384 (Tex. App.—Texarkana 2003, pet. denied). Whether a trial court has subject matter jurisdiction is a question of law that is subject to de novo review; therefore, a trial court's determination of standing is also subject to a

de novo review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728 (Tex. 2003).

A plaintiff must have standing to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Without standing, a court lacks subject matter jurisdiction to hear the case. *Id.* "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in the lawsuit's outcome." *Id.* Further, the issue of standing focuses on who may bring an action. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). Unless standing is conferred by statute, the determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted. *Id.* at 707-08.

Here, we must determine whether the Association proved as a matter of law that the Fallises did not have standing to assert their claims. The Association contests the Fallises' standing to assert their claims based on the principle that a subsequent purchaser cannot recover for an injury committed before his purchase absent an express provision. *See City of Dallas v. Winans*, 262 S.W.2d 256, 259 (Tex. Civ. App.—Dallas 1953, no writ). In its summary judgment evidence, the Association established: (1) the structure over the mailboxes came into existence in 1998; and (2) the Fallises did not purchase the property until April 7, 2004. Accordingly, there is no dispute that the Fallises' purchase occurred six years after the structure over the mailboxes came into existence. The Association asserts because the structure over the mailboxes was in existence before the Fallises purchased the property, the Fallises cannot recover for an injury prior to their purchase of the property, even if that injury arose from a breach of the restrictive covenant, unauthorized use of easement, trespass, breach of fiduciary duty or fraud. *See id.*

### b. Breach of Restrictive Covenants and Unauthorized Use of Easement

With respect to the Fallises' breach of restrictive covenants and unauthorized use of easement claims, the Association's reliance on the principle that a subsequent purchaser cannot recover for an injury committed before his purchase absent an express provision is misplaced because the principle applies to cases involving personal covenants. *See Gleason v. Taub*, 180 S.W.3d 711, 713 (Tex. App.—Fort Worth 2005, pet. denied); *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 226 (Tex. App.—Eastland 2001, pet. denied); *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ. ref'd n.r.e.). In those cases a cause of action for injury to real property is a personal right that accrues when the injury is committed, and "[w]ithout express provision, the right does not pass to a subsequent purchaser of the property." *Gleason*, 180 S.W.3d at 713; *Lay*, 599 S.W.2d at 686. As a result, "a mere subsequent purchaser cannot recover for an injury committed before his purchase." *Lay*, 599 S.W.2d at 686; *see also Senn*, 55 S.W.3d at 226.

Unlike a personal covenant, however, real covenants run with the land, binding the heirs and assigns of the covenanting parties. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). A covenant is considered to run with the land if: (1) it touches and concerns the land; (2) it relates to a thing in existence or specifically binds the parties and their assigns; (3) it is intended by the original parties to run with the land; and (4) the successor to the burden has notice. *Id*; *see also Montford v. Trek Res., Inc.*, 198 S.W.3d 344, 355 (Tex. App.—Eastland 2006, no pet.); *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. denied).

Here, the restrictive covenant, which restricts permissible uses of the property in the subdivision, creates a covenant that runs with the land. *See id.* The restrictive covenant prevents

"any five (5) acre or larger tract nearer than twenty-five (25) feet to the side property line or no nearer than one hundred (100) feet to any public road or no nearer than fifty (50) feet to the rear property line." This creates a covenant that touches and concerns the land and evidences the intent of the parties to prevent the above described building from being built upon the land. The restrictive covenant specifically provides that the covenant binds the parties, their successors, and assigns. Additionally, because the property was conveyed as a fee simple estate, the requirement of privity is satisfied. *See Inwood N. Homeowners' Ass'n*, 736 S.W.2d at 635. Lastly, the deed signed by the Fallises was subject to the restrictive covenants, and therefore, the Fallises had notice of the restrictive covenants. *See id; Montford*, 198 S.W.3d at 335; *Raman Chandler Props., L.C*, 178 S.W.3d at 391. Accordingly, the restrictive covenant creates a covenant running with the land, and therefore, unlike a personal covenant, may be enforced by a successor-in-interest. *See Inwood North Homeowners' Ass'n*, 736 S.W.2d at 635.

Like the restrictive covenant, the Mailbox Easement creates a covenant that runs with the land, and therefore, may be enforced by a successor-in-interest. *See id.* The Mailbox Easement expresses the intent of the original parties to provide the Association with the authority to construct, repair, rebuild, and replace mailboxes. The covenant touches and concerns the land and specifically binds the parties, their successors, and assigns. Similarly, because the property was conveyed in a fee simple estate, the requirement of privity is satisfied, and the deed signed by the Fallises was subject to the Mailbox Easement, giving the Fallises notice of the Mailbox Easement. *See id; Montford*, 198 S.W.3d at 335; *Raman Chandler Props., L.C*, 178 S.W.3d at 391. Accordingly, the Mailbox Easement creates a covenant running with the land, and therefore, may be enforced by successors-in-interest. *See Inwood N. Homeowners' Ass'n*, 736 S.W.2d at 635.

Because it is undisputed that the Fallises are successors-in-interest to the original grantor, Properties of the Southwest, Inc., and the restrictive covenants and Mailbox Easement create a covenant running with the land, the Fallises have standing to enforce the restrictive covenants and Mailbox Easement as a matter of law. *See id.* Accordingly, the Association did not establish the Fallises lacked standing with regard to their breach of restrictive covenant and easement claims, and the trial court erred in granting the Association's partial motion for summary judgment with respect to those claims.

### c. Trespass

The Association is, however, correct that the Fallises do not have standing to assert their trespass claim. Unlike the above claims, this claim for injury to real property is a personal right, which belongs to the person who owned the property at the time of the injury. *See Gleason*, 180 S.W.3d at 713. Absent an express provision, the right to sue for trespass does not pass to a subsequent purchaser, i.e. the Fallises. *Id.* Accordingly, because the injury to the property occurred prior to the Fallises' purchase and the deed contains no express assignment of a trespass claim, we hold the Fallises lacked standing to assert this claim as a matter of law. *See id.*

### d. Breach of Fiduciary Duty and Fraud

We next consider the Association's allegation that the Fallises lack standing to assert their cause of action for breach of fiduciary duty. To recover for breach of fiduciary duty, a plaintiff must establish that the defendant was his or her fiduciary. *See Myer v. Cuevas*, 119 S.W.3d 830, 836 (Tex. App.—San Antonio 2003, no pet.). Whether a fiduciary relationship exists is typically a question of fact for the jury. *Procom Energy, L.L.C. v. Roach*, 16 S.W.3d 377, 382 (Tex. App.—Tyler 2000, pet. denied). A fiduciary relationship may arise in the context of formal or informal relationships. *See Crim Truck & Tractor Co. v. Navistar Int'l*, 823 S.W.2d

591, 594 (Tex. 1992). Formal fiduciary relationships arise as a matter of law between an attorney and client, a principal and agent, a trustee and beneficiary, and partners in a partnership. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Informal relationships may arise "from a moral, social, domestic or purely personal relationship . . . called a confidential relationship." *Id.* Regardless of the formation, a fiduciary relationship is an extraordinary one and cannot be created lightly. *Myer*, 119 S.W.3d at 836.

In their counterclaim, the Fallises contend the Association acknowledged it owed them a fiduciary duty when the Association sent them a letter advising them of its "fiduciary responsibility . . . to protect the property rights of its members." The Fallises next contend the Association breached that fiduciary duty when it violated the restrictive covenant and Mailbox Easement by installing the structure over the mailboxes. Accordingly, the Fallises specified in their pleadings that a fiduciary duty was owed to them, and the Association breached that duty. *See id.* (pointing out plaintiff lacked standing to sue for breach of fiduciary duty when he did not amend pleadings to establish duty was owed to him personally by several defendants). Although we do not decide whether the Association actually owed the Fallises a fiduciary duty, we do hold the Fallises' pleadings sufficiently established their standing to sue for breach of fiduciary duty; therefore, the trial court improperly dismissed this claim.

Additionally, breach of fiduciary duty is a form of constructive fraud. *Redmon v. Griffith*, 202 S.W.3d 225, 240 (Tex. App.—Tyler 2006, pet. denied). Therefore, because we have held the Fallises have standing to raise a breach of fiduciary claim, we further hold they have standing to proceed on a claim for constructive fraud. *See id.*

### 3. Conclusion

We hold the Association failed to establish its affirmative defense of limitations with respect to each of the Fallises' claims as a matter of law. We also hold the Association failed to establish its affirmative defense of lack of standing with respect to the Fallises' breach of restrictive covenants, unauthorized use of easement, breach of fiduciary duty, and fraud claims. Therefore, with respect to those claims, the trial court erred in granting the Association's motion for partial summary judgment.

However, with respect to the Fallises' claim of trespass, we hold the Association established the Fallises' lacked standing to assert their trespass claim as a matter of law. Therefore, the trial court did not err in granting the Association's motion for partial summary judgments as to the trespass claim.

## SEVERANCE

Finally, in their second point of error, the Fallises contend the trial court erred in granting the Association's motion to sever, which in effect severed the Fallises' claims from the Association's claim for declaratory relief. According to the Fallises, their claims should not have been severed because they were compulsory counterclaims given that the facts necessary to prove their claims were so intertwined with the facts necessary to prove the Association's claim for declaratory relief. As a result, the Association's claim and the Fallises' claims all arose out of the same transaction.

We review a trial court's decision to grant or deny a party's motion to sever under an abuse of discretion. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996); *In re Allstate Tex. Lloyds*, 202 S.W.3d 895, 897 (Tex. App.—Corpus Christi 2006, no pet.). Under the Texas Rules of Civil Procedure, any claim against a party may be severed and continued with

separately. TEX. R. CIV. P. 41; *Allstate*, 202. S.W.3d at 897. "A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues." *Allstate*, 202. S.W.3d at 897. The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.*

We agree with the Fallises that their claims were compulsory counterclaims and could not be severed from the Association's requests for declaratory relief. A counterclaim is compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." TEX. R. CIV. P. 97(a). Here, the Association's request for declaratory relief arose out of its effort to clarify its authority to establish the structure over the mailboxes. Similarly, the Fallises' claims against the Association seek to establish the Association was without any such authority. Accordingly, the Fallises' claims against the Association arose out of the same transaction as the Association's request for declaratory relief, and therefore were compulsory counterclaims. *See* TEX. R. CIV. P. 97(a). Moreover, the Fallises' claims and the Association's request for declaratory relief were "so interwoven with the remaining action that they involve the same facts and issues." *See Allstate*, 202. S.W.3d at 897. Accordingly, the trial court abused its discretion in severing the Fallises' claims from the Association's claim for declaratory relief.

## CONCLUSION

Because the trial court's order was overly broad, we reverse the portion of the trial court's order granting the Association's motion for partial summary judgment with respect to the

Fallises' claims seeking declaratory relief regarding the Mailbox Easement and the restrictive covenants, and its request for an injunction in relation thereto. Those causes are remanded to the trial court for further proceedings consistent with this court's opinion. We affirm the trial court's order granting the Association's motion for summary judgment as to the Water Well Easement. With regard to the Fallises' non-declaratory relief claims, we reverse the portion of the trial court's order granting the Association's motion for partial summary judgment with respect to the Fallises' breach of restrictive covenants, unauthorized use of easement, breach of fiduciary duty, and fraud claims. However, we affirm the portion of the trial court's order granting the Association's motion for partial summary judgment with regard to the Fallises' trespass claim. Lastly, we reverse the trial court's order severing the Fallises' claims from the Association's original claim for declaratory relief.

Marialyn Barnard, Justice